84 A.3d 657

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Kenneth HAIRSTON, Appellant.**

Supreme Court of Pennsylvania.

Argued April 9, 2013.

Decided Jan. 21, 2014.

144

148

Michael James Healey, Esq., Healey & Hornack, P.C., Pittsburgh, for Kenneth Hairston.

Rebecca Good McBride, Esq., Allegheny County District Attorney's Office, Amy Zapp, Esq., PA Office of Attorney General, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice BAER.

Appellant Kenneth Hairston was convicted of two counts of murder on April 12, 2002, and, following the penalty phase, was sentenced to death for each murder conviction. Appellant failed to file a timely post-sentence motion or a timely appeal, thereby waiving his individual claims of error. This Court, therefore, engaged solely in our limited, automatic review of death penalty cases, evaluating the sufficiency of the evidence to support the conviction and performing our statutory review of the sentence.[1] *Commonwealth v. Hairston,* 603 Pa. 660,

1. *See* 42 Pa.C.S. § 9711(h)(1) ("A sentence of death shall be subject to automatic review by the Supreme Court of Pennsylvania pursuant to its rules."); 42 Pa.C.S. § 9711(h)(3) (requiring the Court to affirm a death sentence unless we determine "(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor; or (ii) the

985 A.2d 804 (2009). Following our affirmance of the convictions and sentence, Appellant moved for reinstatement of his direct appeal rights *nunc pro tunc*, which the trial court granted. *See, e.g., Commonwealth v. Lantzy*, 558 Pa. 214, 736 A.2d 564 (1999) (permitting the restoration of appellate rights *nunc pro tunc* as a remedy for counsel's ineffectiveness for failing to file a direct appeal).[2] Appellant now presents numerous claims of error related to his convictions and sentence. Upon consideration of these claims, we find no reversible error in the guilt or penalty phases of Appellant's trial, and affirm.

Because we have already engaged in a sufficiency review and found that "the evidence of guilt was overwhelming," *Hairston*, 985 A.2d at 809, we provide the following facts solely as background.

On May 21, 2000, Appellant arrived at the apartment of his step-daughter, Chetia Hurtt, with a handgun he was not licensed to carry. When he was let into the apartment, Appellant threatened to kill Hurtt, her boyfriend, Jeffrey Johnson, who was also present, and himself. After Appellant demanded Mr. Johnson leave the apartment, he pointed the gun at Hurtt, pushed her down, and attempted to remove her clothes. Meanwhile, Mr. Johnson informed police about what was occurring, and the police responded immediately.

When they arrived at the apartment, they found Appellant, half-naked, and recovered his gun. As the police were bringing Appellant out of the apartment, he attempted to escape. During the course of the ensuing investigation, Ms. Hurtt informed police that Appellant had been assaulting her for years and making threats against her family. She agreed to press charges. As a result of these events, Appellant was charged with rape, attempted rape, attempted escape, and related crimes. According to Ms. Hurtt's subsequent testimony, following his arrest Appellant threatened to harm himself

evidence fails to support the finding of at least one aggravating circumstance . . .").

2. The Commonwealth offers no argument that the trial court's order in this regard was erroneous.

and his family if Ms. Hurtt revealed his past assaults and persisted in pressing charges.

As the time of Appellant's rape trial drew near, Appellant acted on his threats. On June 11, 2001, two weeks before his trial for assaulting Ms. Hurtt was scheduled to begin, he directed the school bus company of his autistic teenage son, Sean, not to pick him up for school. Later that day, firefighters responded to a report of smoke coming from the home Appellant shared with his wife, Katherine, Sean, and his wife's mother, Goldie Hurtt. When the firefighters gained entry, they discovered that the house was strewn with garbage and debris and the doors were barricaded. Once inside, they discovered Sean on the living room couch, and although they brought him out of the house alive, he later died at the hospital from blunt force trauma to the head. Firefighters discovered Katherine's body in the kitchen, and it was later determined that she too died from blunt force trauma to the head. Goldie Hurtt was rescued from the house, unharmed. Appellant was discovered in the kitchen with several self-inflicted puncture wounds to the neck and chest. When emergency responders removed him from the house, he was extremely combative.

At the hospital, Appellant indicated that he had killed his wife and started the fire, and that his motivation for doing so was anxiety and outrage over the pending rape allegations and imminent trial on these charges. Eight days later, on June 19, 2001, Appellant further explained that he bludgeoned his wife and son with a sledgehammer, left the house with the weapon and went to a local bar, where he consumed several drinks, and returned home. Upon his return, he spread debris around the house, barricaded the doors, and poured gasoline around the basement floor, which was ignited by the water heater. He attempted to stab himself, and then lay down next to his wife's body. He explained that he intentionally piled debris around the house to fuel the fire and to "make sure that we were gone." *Hairston,* 985 A.2d at 807.

Appellant was charged with two counts of criminal homicide. Meanwhile, on December 14, 2001, Appellant was convicted of

rape, sexual assault, burglary, attempted escape, and related charges resulting from his abuse of his step-daughter over a five year period from when Ms. Hurtt was fifteen to twenty-one, and from the charges for his conduct on May 21, 2000. At his murder trial, the Commonwealth argued that Appellant killed his wife and son to punish Ms. Hurtt for reporting to the authorities that Appellant held her at gun-point and attempted to rape her, and had raped her previously. At the penalty phase, the jury found two aggravating circumstances, and two mitigating circumstances.[3] Weighing these, the jury returned a sentence of death for both convictions, which the trial court imposed on July 11, 2002.

Following the expiration of time to file post-sentence motions, trial counsel moved to withdraw. After the time to file an appeal had expired, the trial court appointed new counsel on September 9, 2002. On January 14, 2003, appointed counsel moved to withdraw, before he had filed anything on Appellant's behalf. Current counsel entered an appearance on August 22, 2005. Upon counsel's request, on September 2, 2005, the trial court gave Appellant 45 days to file post-sentence motions, and eventually extended this time. Post-sentence motions were filed May 8, 2006. Following the Commonwealth's answer, the trial court denied Appellant's motions on June 2, 2008, and Appellant thereafter filed his notice of appeal to this Court on June 6, 2008.

On direct appeal, we determined that the periods during which Appellant was eligible to file either a post-sentence motion or an appeal had lapsed years earlier. *See* Pa. R.Crim.P. 720(A)(3) ("If the defendant does not file a timely

---

3. As we explained in *Hairston,* 985 A.2d at 807:

 In each murder, the jury found two aggravating circumstances: 1) Appellant had a significant history of violent felony convictions, 42 Pa.C.S. § 9711(d)(9); and 2) Appellant had been convicted of another murder, *id.* § 9711(d)(11). The jury also found two mitigating circumstances: 1) Appellant was under the influence of extreme mental or emotional disturbance, *id.* § 9711(e)(2); and 2) other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense, *id.* § 9711(e)(8). The jury concluded that the aggravating circumstances outweighed the mitigating circumstances.

post-sentence motion, the defendant's notice of appeal shall be filed within 30 days of imposition of sentence."). Consequently, we held that Appellant's appeal period had already expired before he requested an extension of time to file post-sentence motions, and that all claims not associated with our automatic review of capital cases were not preserved. *Hairston*, 985 A.2d at 808. Based on our automatic review, we affirmed Appellant's conviction and sentence.

Following our decision, Appellant filed a petition for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.*, arguing that prior counsel was ineffective for failing to file timely post-sentence motions and requesting the reinstatement of his appellate rights *nunc pro tunc*. The Commonwealth filed an answer conceding that prior counsel was ineffective. The court granted relief by permitting Appellant to file a notice of appeal *nunc pro tunc*. Appellant complied, raising numerous issues. In its responsive brief to this Court, the Commonwealth makes no argument that the trial court's grant of *nunc pro tunc* relief was inappropriate. We will therefore proceed to address the issues Appellant has raised.

## I. Arson Evidence

Appellant's first issue concerns the Commonwealth's guilt-phase evidence that Appellant intentionally set fire to his house after murdering his wife and son, where the Commonwealth had not charged him with arson. The trial court permitted the Commonwealth to introduce this evidence for two reasons: first, because it demonstrated malice by establishing that the deaths were intentional and not accidental; second, because it demonstrated Appellant's consciousness of guilt by establishing that the fire was a suicide attempt. *See Commonwealth v. Sanchez*, 416 Pa.Super. 160, 610 A.2d 1020 (1992) (holding that evidence that a person accused of a crime attempted to commit suicide is admissible because it is indicative of consciousness of guilt); Pa.R.E. 404(b)(2) (permitting evidence of a defendant's prior bad acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identity,

absence of mistake, or lack of accident."). The trial court explained to the jury that evidence of the fire was admitted not to show that Appellant was a person of bad character, but only to establish his state of mind at the time he acted.

Appellant argues that although the trial court decided to permit the Commonwealth to admit evidence of the uncharged arson pursuant to Rule 404(b)(2), it is not apparent from the record that the court ever engaged in the balancing test required by that rule, which provides that although prior bad acts may be admissible, "[i]n a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). Appellant asserts that the trial court's failure to engage in this balancing test was an abuse of discretion.

Engaging in the balancing test he faults the trial court for omitting, Appellant argues that he was prejudiced by evidence of the fire because it tended to prove Appellant's guilt of arson, a crime for which he was not charged. According to Appellant, if the Commonwealth only wanted the jury to hear that Appellant had attempted suicide to demonstrate his consciousness of guilt, it could have introduced evidence of Appellant's self-inflicted stab wounds and his hospital confession that he had tried to kill himself, without prejudicing him with evidence that he also committed arson. Finally, Appellant contends that the trial court's jury instruction did not obviate its duty to evaluate the evidence's probative value and potential for unfair prejudice in the first instance.

The Commonwealth responds that evidence that Appellant set his house on fire after murdering his family was admissible to prove Appellant's intent and to show consciousness of guilt, as the trial court found, and, additionally, to furnish a complete story of the events. The Commonwealth argues that the fire evidence generally established that Appellant intended to conceal the commission of the murders and to escape their consequences, and demonstrated the detailed and deliberate manner in which Appellant acted on the day of the murders.

■ The trial court's decision to admit evidence is subject to review for an abuse of discretion. *Commonwealth v. Dengler*, 586 Pa. 54, 890 A.2d 372, 379 (2005). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Dillon*, 592 Pa. 351, 925 A.2d 131, 136 (2007); *Grady v. Frito–Lay, Inc.*, 576 Pa. 546, 839 A.2d 1038, 1046 (2003).

■ Evidence of "other crimes, wrongs, or other acts" is inadmissible solely to show a defendant's bad character or his propensity for committing criminal acts. Pa.R.E. 404(b)(1); *Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491 (1988). Such evidence is admissible, however, when relevant for another purpose, including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. Pa. R.E. 404(b)(2); *Commonwealth v. Chmiel*, 585 Pa. 547, 889 A.2d 501, 534 (2005). This Court has also recognized the *res gestae* exception, permitting the admission of evidence of other crimes or bad acts to tell "the complete story." *Commonwealth v. Williams*, 586 Pa. 553, 896 A.2d 523, 539 (2006); *Commonwealth v. Paddy*, 569 Pa. 47, 800 A.2d 294, 308 (2002); *Lark*, 543 A.2d at 497. Such evidence may be admitted, however, "only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

Evidence that Appellant set the house on fire was admitted through several witnesses who testified that they observed smoke coming from the house, were unable to kick in the door because Appellant had barricaded it, and, once inside, discovered garbage bags and debris everywhere, including on top of Sean. These witnesses explained that it was because of the fire that they were in the residence and discovered that Sean and Katherine had been bludgeoned, and that Appellant was found hurt but alive in the home. Appellant's actions in setting the fire were described by firefighters and experts who analyzed material at the scene, and a fire investigator who concluded to a reasonable degree of scientific certainty that the fire had

been deliberately set. The jury also heard that Appellant explained to police shortly after the fire that he had been anxious because of his upcoming trial, and believed that if he went to prison it would be more than his wife and son could bear. According to Appellant's confession, he decided to kill his family and himself, and, in furtherance of this plan, bludgeoned them with a sledgehammer, set the house on fire, and attempted to stab himself to death.

■ We conclude that the trial court did not abuse its discretion when it held that the arson evidence of which Appellant complains was relevant and admissible. First, the evidence was admissible to show Appellant's intent to commit first-degree murder. Willful, premeditated, and deliberate intent to kill distinguishes first-degree murder from other criminal homicide. See 18 Pa.C.S. § 2502 ("A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing."). The evidence described above that Appellant set his house on fire to ensure his family members' deaths was probative that Appellant was cognizant of his purpose throughout the entire day of June 21, 2000, and acted willfully, deliberately, and intentionally in accord with his purpose to kill his family.

Second, consistent with Appellant's statement that he piled items throughout the house to ensure that the fire killed everyone, *Hairston*, 985 A.2d at 807 ("I just wanted to make sure that we were gone."), the testimony and exhibits concerning the fire were also admissible as evidence that Appellant attempted to take his own life, and was probative of his consciousness of guilt. *See Commonwealth v. Homeyer*, 373 Pa. 150, 94 A.2d 743 (1953) ("Flight, manifestations of mental distress, fear at the time of or just before or just after discovery of the crime, an attempt to commit suicide at such time, as well as evidence to prove motive, intent, plan or design are admissible."); *Commonwealth v. Giacobbe*, 341 Pa. 187, 19 A.2d 71, 74 (1941) (holding that a jury had properly been allowed to consider two suicide attempts by the defendant following police interrogation because such attempts tended to establish consciousness of guilt).

Third, evidence of the fire was also relevant for *res gestae* purposes to explain the history and course of events on June 21, 2000, to explain how the victims' bodies were removed from the home, and to identify what evidence the police discovered at the crime scene. *See Commonwealth v. Dillon,* 592 Pa. 351, 925 A.2d 131, 139 (2007) (holding that *res gestae* evidence was admissible to explain the events surrounding the criminal conduct and resulting prosecution so that the case presented to the jury did not appear in a vacuum); *Commonwealth v. Paddy,* 569 Pa. 47, 800 A.2d 294, 308 (2002) (holding that evidence of prior crimes and the events that followed were admissible under the *res gestae* exception to the rule against admission of prior-crimes evidence); *Commonwealth v. Brown,* 52 A.3d 320, 332 (Pa.Super.2012) ("... the history of the *res gestae* exception demonstrates that it is properly invoked when the bad acts are part of the same transaction involving the charged crime.").

Moreover, we agree with the Commonwealth that the probative value of the fire evidence outweighed its prejudicial effect. The trial court is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." *Lark,* 543 A.2d at 501. Although evidence of the fire may have been prejudicial, it was not unduly so. *See Commonwealth v. Dillon,* 592 Pa. 351, 925 A.2d 131, 141 (2007) ("Evidence will not be prohibited merely because it is harmful to the defendant."); *Commonwealth v. Gordon,* 543 Pa. 513, 673 A.2d 866, 870 (1996) ("Without doubt, the other crimes evidence would be prejudicial to Gordon. That is what it is designed to be. On the facts of this case, however, it is not unduly prejudicial, as it is required for the Commonwealth's case."). As the comment to Rule 403 instructs, " '[u]nfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 cmt. The arson evidence, introduced for legitimate purposes, was not so prejudicial that

it likely diverted the jury's intention away from its duty of weighing the evidence impartially.

■ Additionally, when examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence. Pa.R.E. 404(b) cmt; *Dillon*, 925 A.2d at 141. Prior to the introduction of the evidence, the trial court provided a limiting instruction to the jury with regard to how the evidence of the arson should be considered, *see* Notes of Testimony (N.T.), 4/16/2002, p. 18–19, and again during the closing charge, *id.* 4/17/2002, p. 147–49, informing the jury about the limited purpose of the arson evidence. Jurors are presumed to follow the trial court's instructions. *Commonwealth v. Baker*, 531 Pa. 541, 614 A.2d 663, 672 (1992). The trial court's instruction minimized the likelihood that the arson evidence inflamed the jury or caused it to convict Appellant on an improper basis. We conclude, therefore, on this basis as well, that the trial court did not commit error in admitting this evidence. *See Commonwealth v. Sherwood*, 603 Pa. 92, 982 A.2d 483, 497–98 (2009) (finding that cautionary instructions were sufficient to overcome the prejudicial effect of prior bad acts evidence); *Commonwealth v. Williams*, 586 Pa. 553, 896 A.2d 523, 540 (2006) (holding that any error in admission of prior bad acts was cured by the trial court's contemporaneous administration of a cautionary instruction and by its final instruction limiting the jury's consideration of the prior bad acts evidence); *Commonwealth v. Claypool*, 508 Pa. 198, 495 A.2d 176, 179–180 (1985) (same).

■ Finally, to the extent Appellant is critical of the trial court for failing to make an explicit ruling on the record regarding the admissibility of the fire evidence, we do not agree that any error in this regard warrants relief. Appellant's counsel began the trial by discussing the fire to explain that neither victim was killed by it. Additionally, despite being aware of the fire and its role in the events, Appellant filed no pre-trial objection to the arson evidence. As the Commonwealth presented its case, Appellant made no objection to the first witness who gave testimony about the fire,

waiting for the next witness to object. This history suggests possible waiver of the relevant issue for appeal. *See Commonwealth v. Brown*, 467 Pa. 512, 359 A.2d 393 (1976) (holding that the lack of a timely objection waived issue for appellate review).

Moreover, if the issue is preserved, Appellant is entitled to no relief resulting from the trial court's failure to articulate its balancing test on the record. We presume that trial courts know the law, and there is nothing in this record to suggest that this trial court did not understand its duty to weigh the evidence in accord with the Rules of Evidence. Such weighing and the general consideration of the admissibility of evidence is a discretionary ruling which trial courts routinely engage in mentally. There is no requirement that it record these mental deliberations on the record. We are satisfied from the trial court's discussion of why it considered the fire evidence admissible that it understood the applicable criteria, and mentally engaged in the appropriate balancing test. Appellant's argument that the trial court has to think out loud has no merit, and we reject it.

## II. Felony Murder Instruction

██ Appellant's second issue also relates to the Commonwealth's evidence of arson. Following the trial court's decision to permit the Commonwealth to introduce evidence of the arson, Appellant requested that the trial court provide a jury instruction regarding second degree/felony murder, which is the killing of another with malice while engaged in the commission of a felony. 18 Pa.C.S. § 2502(b) ("A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony."). One such felony is arson. *See* 18 Pa.C.S. § 3301. In support of this request, Appellant argued that the victims' deaths occurred in the course of committing the felony of arson. The trial court refused to provide the requested jury instruction because it concluded there was no evidence tending to show that the murders were incidental to the act of arson; rather, the

evidence established that the arson was committed after Appellant committed the acts that caused the victims to die.

Appellant argues that once the trial court permitted the Commonwealth to introduce the arson evidence, it was required to provide the requested jury instruction. In this regard, Appellant argues that there was sufficient evidence on the record for the jury to conclude that the homicides resulted not from premeditation, as the Commonwealth suggested, but were the incidental result of Appellant's suicide attempt. Specifically, Appellant argues that a reasonable jury could have concluded that Appellant planned to commit suicide prior to assaulting his wife and son as demonstrated by Ms. Hurtt's testimony that Appellant had threatened to harm himself and his family, that he bludgeoned them with a sledgehammer to incapacitate them so that his suicide plan would not be interrupted, and that he similarly barricaded the doors to the house to prevent anyone from exiting or entering the home before he was dead. Conceding that he did not advance this theory to the jury, Appellant argues that the jury was free to make these inferences even in the absence of advocacy by the defense. See Commonwealth v. Vandivner, 599 Pa. 617, 962 A.2d 1170, 1177–78 (2009) (holding that it is the province of the jury to weigh evidence, and it is free to believe all, part, or none of the evidence). Appellant argues that when faced with a defense request for a felony murder instruction, the trial court was required to provide it without assessing the likelihood of the inferences the jury could draw from the evidence.

The Commonwealth responds that this argument is meritless because there was nothing in the evidence to suggest that Appellant killed the victims in the course of committing arson. Rather, the Commonwealth argues that the evidence established that Appellant killed his family by blunt force trauma and, after a substantial delay during which he went to a bar, had some drinks, disposed of the weapon, returned home, spread debris around the house, and barricaded the doors, he ignited the fire only after all these other actions were complete.

 Defendants are generally entitled to instructions that they have requested and that are supported by the evidence. *Commonwealth v. Markman,* 591 Pa. 249, 916 A.2d 586, 607 (2007); *Commonwealth v. DeMarco,* 570 Pa. 263, 809 A.2d 256, 261 (2002) ("Where a defendant requests a jury instruction on a defense, the trial court may not refuse to instruct the jury regarding the defense if it is supported by evidence in the record."); *Commonwealth v. Browdie,* 543 Pa. 337, 671 A.2d 668, 673–74 (1996) ("[W]e hold that a trial court shall only instruct on an offense where the offense has been made an issue in the case and where the trial evidence reasonably would support such a verdict."). We have explained that the reason for this rule is that "instructing the jury on legal principles that cannot rationally be applied to the facts presented at trial may confuse them and place obstacles in the path of a just verdict." *Commonwealth v. Taylor,* 583 Pa. 170, 876 A.2d 916, 925–26 (2005) (quoting *Commonwealth v. White,* 490 Pa. 179, 415 A.2d 399, 400 (1980)). A criminal defendant must, therefore, "establish that the trial evidence would 'reasonably support' a verdict based on the desired charge and may not claim entitlement to an instruction that has no basis in the evidence presented during trial." *Id.* (citing *Commonwealth v. Carter,* 502 Pa. 433, 466 A.2d 1328, 1332–33 (1983)). When a defendant seeks a charge of second degree felony, therefore, there must be evidence that a criminal homicide was committed during the perpetration of a felony. *Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293, 305 (1999).

The evidence presented at Appellant's trial did not show that the homicides were committed during the perpetration of the felony of arson. Rather, it showed that the arson was committed substantially subsequent to Appellant killing his wife and delivering the blows that would ultimately kill his son. According to the Commonwealth's forensic evidence, Sean died from blunt force trauma to the head. Although he survived for several days in the hospital, there is no indication that the fire contributed to his death. Similarly, Katherine died from blunt force trauma to the head before the fire began. Additionally, in his statements to police, Appellant

admitted that he decided to kill his wife and son, hit them with a sledgehammer, left the house and went to a bar for a few drinks, discarded the weapon, and then returned home to set fire to the house. The evidence indicated, therefore, that the victims' deaths were not caused by arson, and supports the trial court's decision not to charge the jury with respect to second degree murder. *See Commonwealth v. Williams,* 557 Pa. 207, 732 A.2d 1167 (1999) ("holding that an instruction on second degree murder is not required where the evidence is insufficient to establish a jury question as to whether the killing occurred during the perpetration of a robbery, or another enumerated felony."); *Commonwealth v. Lark,* 548 Pa. 441, 698 A.2d 43 (1997) (holding that where there was no evidence that the murder was committed in the course of a felony, there was no ineffectiveness of counsel for failing to request a jury instruction on second degree murder).

### III. Assault Evidence

Appellant next argues that the trial court erred by allowing the Commonwealth to introduce evidence that he had previously been arrested and charged with attempting to rape his step-daughter, Ms. Hurtt, on May 21, 2000, and with threatening her and Mr. Johnson with a gun.

The Commonwealth offered this evidence pursuant to Rule 404(b)(2) to establish Appellant's motive for the murders. Specifically, the Commonwealth theorized that Appellant committed the homicides because he was anxious and outraged about his upcoming trial and Ms. Hurtt's allegations that he had raped her, and he desired to punish her by killing her mother and half-brother. The Commonwealth produced evidence from Ms. Hurtt regarding the events of May 21, 2000, when Appellant demonstrated controlling behavior by trying to find her location, arriving at her apartment, demanding entrance, directing Mr. Johnson to leave, and brandishing the gun. According to Ms. Hurtt, she believed Appellant intended to kill her, Mr. Johnson, and himself. She stated that Appellant had threatened her in the past. After pointing a gun at

her, Appellant disrobed and attempted to sexually assault Ms. Hurtt before the police arrived.

Mr. Johnson corroborated this testimony. Additionally, the Commonwealth offered evidence that Appellant attempted to escape from police custody, yelling that he could not go to jail. Ms. Hurtt also testified that, following the attempted rape, Appellant threatened to kill their whole family if she reported his prior assaults. The trial court permitted this evidence, finding it probative of motive and not unduly prejudicial. Prior to the Commonwealth's introduction of the evidence at trial, the court gave a limiting instruction to the jury directing them not to consider the evidence for the purpose of determining Appellant is a bad individual and must therefore be guilty, and informing them that the evidence was purely to establish a motive for the homicides. N.T. 4/15/2002, p. 34–36.

Appellant argues that evidence of his prior assault of Ms. Hurtt and his escape attempt should not have been admitted because the prejudicial effect of such evidence outweighed its probative value, see Pa.R.E. 404(b)(2), and that the trial court should have limited the scope of the evidence. See Dillon, 925 A.2d at 141 (providing that a proper weighing of the probative value of the evidence versus its potential unfair prejudicial effect requires the court to "consider the scope and contour of the proffered evidence, to minimize its potential for unfair prejudice."). According to Appellant, there was less prejudicial evidence the Commonwealth could have relied on to establish that Appellant was anxious and upset about the result of his upcoming trial, such as statements Appellant made to a neighbor that he was anxious about his fate after the trial. He further argues that any threats he made to Ms. Hurtt on May 21, 2000, did not mention Katherine or Sean, and were therefore inadmissible as irrelevant.

The Commonwealth responds that evidence related to Ms. Hurtt on May 21, 2000, was admissible to demonstrate motive, intent, and to provide the sequence of events and history of the homicides.

█ We agree with the Commonwealth and the trial court that its decision to admit this evidence was not an abuse of discretion. *See Dengler,* 890 A.2d at 379 (providing that the trial court's decision to admit evidence is subject to review for an abuse of discretion). Evidence of motive is admissible. *Commonwealth v. Boyle,* 470 Pa. 343, 368 A.2d 661, 669 (1977). Evidence of the May 21, 2000, incident was relevant to establish Appellant's motive for killing his wife and son, because the prior bad acts were evidence that the murders "grew out of or w[ere] in any way caused by the prior" incidents. *Commonwealth v. Drumheller,* 570 Pa. 117, 808 A.2d 893, 906 (2002) (". . . to be admissible . . ., evidence of a distinct crime, even if relevant to motive, 'must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances.' ") (internal citations omitted).

Appellant's threats to kill Ms. Hurtt's family, his threats to Ms. Hurtt and Mr. Johnson on May 21, 2000, his attempted rape of Ms. Hurtt on that date, and his past relationship with her, were all relevant at the homicide trial because, two weeks before the rape trial was scheduled to begin, Appellant followed through on the threats by killing his wife and son. The prior bad acts admitted by the Commonwealth explained what would have otherwise appeared to be inexplicable conduct toward his wife and son. *See Commonwealth v. Malloy,* 579 Pa. 425, 856 A.2d 767 (2004) (holding that evidence of the defendant's drug-related activity was admissible to show motive); *Commonwealth v. Stallworth,* 566 Pa. 349, 781 A.2d 110 (2001) (holding that the defendant's prior bad acts were admissible to establish motive).

Appellant's prior bad acts were also admissible as the Commonwealth sought to prove that Appellant did not suddenly become enraged and decide to kill his family; rather, he had threatened his family in the past when Ms. Hurtt persisted in pressing charges; and, as the trial drew near, he carried through with his repeated threats and murdered his family in retaliation for Ms. Hurtt's actions.

The disputed evidence was further admissible, as the Commonwealth asserts, to demonstrate the sequence of events and the natural history of the homicides as *res gestae*. The prior assaults of Ms. Hurtt, including that of May 21, 2000, formed part of the history, or chain of events, culminating in the homicides. This evidence showed that Appellant had, in the past, threatened to murder his family in retaliation for Ms. Hurtt's actions, and on June 11, 2001, he took action in furtherance of these threats. *Commonwealth v. Robinson*, 581 Pa. 154, 864 A.2d 460, 496–97 (2004) (holding that evidence of prior bad acts is admissible where the particular crime or act was part of a chain, sequence, or natural development of events forming the history of a case); *Commonwealth v. Chandler*, 554 Pa. 401, 721 A.2d 1040, 1044 (1998) ("Evidence of prior abuse is also admissible if it is part of a chain or sequence of events which formed the history of the case and was part of its natural development.").

■ Moreover, the trial court did not abuse its discretion in concluding that probative value of the evidence outweighed any prejudice to Appellant because, like the prior bad acts evidence related to arson (discussed in the first issue), it was introduced for the limited purpose of proving motive and intent, and was not so prejudicial that it likely diverted the jury's attention away from its duty of weighing the evidence impartially. Finally, the trial court's cautionary instruction ameliorated the prejudicial impact of the evidence. *See* Pa. R.E. 404(b) cmt; *Dillon*, 925 A.2d at 141.

## IV. Photographic Evidence

■ Appellant next argues that the trial court erred in permitting the Commonwealth to introduce five photographs into evidence. These photographs depict the outside of Ms. Hurtt's apartment building and were used during the testimony of a police officer to illustrate to the jury how Appellant attempted to escape from police custody while he was being taken out of the building. Appellant objected to the admission of these photographs, asserting that they were irrelevant and prejudicial.

Initially, there is a dispute about whether these photographs were admitted. Appellant argues that following his objection, the trial court sustained the objection, but the photographs were moved into evidence anyway. N.T. 4/15/2002, p. 94. The trial court explained, however, that Appellant is factually incorrect. Rather than sustaining a defense objection to the admission of this evidence, as Appellant asserts, the trial court explained that the objection that was sustained was to a question from the prosecutor just before the prosecutor offered the photographs into evidence. The Commonwealth agrees with Appellant that the trial court sustained the defense objection to the admission of these photographs, but asserts that they were not admitted into evidence. The Commonwealth believes that the court reporter mistakenly typed that the photographs "were admitted into evidence" instead of "were not admitted into evidence." The Commonwealth further asserts that the photographs were not shown to the jury, were not provided to the jury during their deliberations, and that the prosecutor noted at the close of trial that these photographs had not been admitted.

 Because the trial transcripts appear to indicate that the trial court sustained the objection and that the photographs were admitted into evidence, we will assume, as Appellant argues, that the evidence was improperly introduced, and will address whether the improper admission of this evidence was harmless error. "The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial." *Commonwealth v. Rasheed*, 536 Pa. 567, 640 A.2d 896, 898 (1994); *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). We have described the proper analysis as follows:

Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial

effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Hawkins,* 549 Pa. 352, 701 A.2d 492, 507 (1997); *Commonwealth v. Williams,* 524 Pa. 404, 573 A.2d 536 (1990).

In this regard, Appellant asserts without elaboration that he was prejudiced by the police officer's testimony about his attempted escape and the photographs depicting where he jumped from and where he landed. Responding to this argument, the Commonwealth asserts that the photographs were not prejudicial because they merely showed the roof of the apartment building and the surrounding structures, because evidence of Appellant's escape generally was admissible, and because evidence of Appellant's guilt was overwhelming.

We agree with the Commonwealth that no new trial is warranted. Any error involved with admission of these photographs was harmless because the error did not prejudice Appellant. Although Appellant presently asserts that the police officer's testimony about the attempted escape was improper, he lodged no objection to this testimony at trial, and this aspect of his claim is waived. *See* Pa.R.A.P. 302(a). The only arguably preserved objection is to the admission of the photographs. These photographs were relevant to the escape charges, evidence of which was admissible as part of the May 21, 2000, incident, as discussed above in connection with the third issue. Moreover, the photographs themselves were not inflammatory, as they depict the exterior of the apartment building and the surrounding buildings. Because evidence of Appellant's escape was admissible, the photographs were not inflammatory, and Appellant has not established how admission of these photographs could have caused him prejudice, we conclude that any possible error resulting from their admission was harmless.

## V. Victim Impact

Turning to Appellant's penalty phase issues, he argues that the trial court erred in allowing certain victim-impact evidence by three individuals who were not the victims'

family members by blood. We observe preliminarily that regarding two such witnesses (Theodore Jones and Avis Beck), Appellant has waived any objection to their testimony by failing to object at trial, *see* Pa.R.A.P. 302; *Commonwealth v. May*, 584 Pa. 640, 887 A.2d 750, 761 (2005) (finding waiver in a capital appeal due to the defendant's failure to object to the evidence at trial), and to identify them in his Rule 1925(b) statement of matters complained of on appeal, *see* Pa.R.A.P. 1925(b); *Commonwealth v. Castillo*, 585 Pa. 395, 888 A.2d 775, 780 (2005) ("Any issues not raised in a Pa.R.A.P. 1925(b) statement will be waived." (quoting *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306, 309 (1998))).

As to the third witness of whom Appellant complains, Clayton Mariner was a friend of the family for over thirty-eight years. Appellant objected to his testimony on the basis that Mr. Mariner was not related to the victims, and the trial court partially overruled and partially sustained the objection, permitting the witness to testify about the impact of the murders on the family but not on himself. Notwithstanding this ruling, according to Appellant, Mr. Mariner used the pronouns "we" and "us" when discussing the impact of the murders on the family. *See, e.g.*, N.T. 4/18/2002, p. 60 ("We think of the happier occasions when life is good for all of us together and praying. It helps us get through these times.").

Appellant's present argument is twofold: First, he argues this testimony was inappropriate because it was not limited to the impact of the murders on the family as the trial court had limited it; and, second, he generally urges this Court to limit the scope of who may present appropriate victim impact evidence to surviving family members.

Section 9711(a)(2) expressly permits testimony about "the victim and the impact that the death of the victim has had on the family of the victim …," [4] and directs the trial court to

4. This section provides as follows:

(2) In the sentencing hearing, evidence concerning the victim and the impact that the death of the victim has had on the family of the victim is admissible. Additionally, evidence may be presented as to any other matter that the court deems relevant and admissible on the

instruct the jury about how to consider such evidence.[5] It does not directly limit who may testify regarding the impact of the crimes on the family. Moreover, we have explained that trial courts have substantial control over the manner in which victim impact testimony is presented to the jury. *Commonwealth v. Taylor*, 583 Pa. 170, 876 A.2d 916, 935 (2005); *Commonwealth v. Means*, 565 Pa. 309, 773 A.2d 143, 158 (2001) (Opinion Announcing the Judgment of the Court); *id.* at 160 (Saylor, J., concurring).

We find no support for Appellant's argument that Mr. Mariner's testimony was improper because he included himself in his description of the impact of Appellant's crimes on the family. Mr. Mariner's testimony was relevant to the impact of Appellant's crimes on the family of the victims. Mr. Mariner had been a family friend for thirty-eight years, and, as the trial court explained, was able to offer insight into the effect of the murders on the family of the victims. The prosecutor's questioning of the witness focused on the effect on the family, and the trial court instructed the jury that they were to consider the effect that the deaths had on the family members of the victims.

We further find no support for Appellant's position that testimony should be limited to family members. While Section § 9711(a)(2) limits the subject matter of victim impact evidence (to that relating to "the victim and the impact that the death of the victim has had on the family of the victim

question of the sentence to be imposed. Evidence shall include matters relating to any of the aggravating or mitigating circumstances specified in subsections (d) and (e), and information concerning the victim and the impact that the death of the victim has had on the family of the victim. Evidence of aggravating circumstances shall be limited to those circumstances specified in subsection (d).
42 Pa.C.S. § 9711(a)(2).

5. Section 9711(c)(2) states, in relevant part, as follows:
The court shall instruct the jury that if it finds at least one aggravating circumstance and at least one mitigating circumstance, it shall consider, in weighing the aggravating and mitigating circumstances, any evidence presented about the victim and about the impact of the murder on the victim's family.
42 Pa.C.S. § 9711(c)(2).

..."), it does not limit the witnesses who may offer such testimony. We see no basis under such circumstances to find trial court error.

## VI. Mitigation

Appellant next argues that the trial court erred in barring him from offering certain evidence in support of the catch-all mitigating circumstance. *See* 42 Pa.C.S. § 9711(e)(8) (permitting the defendant to introduce "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense."). Specifically, Appellant argues he should have been allowed to introduce jail records indicating that his wife visited him in jail while he was incarcerated on charges that he assaulted Ms. Hurtt.

The Commonwealth objected on relevancy grounds, and the trial court sustained the objection. Appellant argues the evidence was relevant to show there was no animosity between him and his wife before he murdered her, to show that his character was one worthy of such devotion, to demonstrate that he needed and desired the loving support of his wife, and to show that he was not a hardened criminal. Appellant argues further that this evidence was admissible to rebut the Commonwealth's evidence of the statutory aggravating factor that Appellant had a "significant history of felony convictions involving the use or threat of violence to the person." 42 Pa.C.S. § 9711(d)(9). The Commonwealth had introduced the testimony of Ms. Hurtt in support of this aggravating factor, and Appellant argues that evidence that his wife visited him in jail would have suggested that she may have doubted the veracity of her daughter in making the assault accusations against him, which may have, in turn, caused the jury to find less weight in this aggravating factor.[6]

6. Although Appellant characterizes this issue in constitutional terms, we consider it solely as a claim that the trial court abused its discretion in barring admission of the proffered evidence. When Appellant sought to introduce the evidence before the trial court, and the trial court sustained the Commonwealth's relevancy objection, Appellant did not raise a constitutional claim; rather, he argued for the admission of the evidence solely on relevancy grounds. N.T. 4/18/2002, p. 92 ("I think it goes to the nature of the relationship between the two of them.").

■ Although "[a] defendant may present evidence of mitigating circumstances at the sentencing hearing, [ ] the evidence must be relevant and admissible." 42 Pa.C.S. § 9711(a)(2); *Commonwealth v. Young*, 536 Pa. 57, 637 A.2d 1313, 1322 (1993); *Commonwealth v. Holcomb*, 508 Pa. 425, 498 A.2d 833, 857 (1985) (providing that "the defense has an opportunity to present evidence beyond the mitigating factors expressly set out in the statute. The only limitation is that of general relevancy."). As with all evidence, the admission of mitigation evidence is vested within the sound discretion of the trial court. *Young*, 637 A.2d at 1322. Relevant evidence is that which has any tendency to make a material fact more or less probable. Pa.R.E. 401.

■ Section 9711(e)(8) is referred to as the "catch-all" mitigator because it encompasses a wide range of evidence, including life history, mental health status, physical or psychological abuse, neglect, and substance abuse. *See Commonwealth v. Reyes*, 600 Pa. 45, 963 A.2d 436, 440 & n. 4 (2009) (listing the factors supporting the catch-all mitigator); *Commonwealth v. Fahy*, 512 Pa. 298, 516 A.2d 689, 698 (1986) ("At sentencing, the defendant is free to introduce any evidence in mitigation which might persuade the sentencer to be lenient in determining his penalty."). Multiple mitigating factors offered pursuant to the catch-all mitigating circumstance may establish, at most, a single statutory mitigating circumstance. *Commonwealth v. Reyes*, 600 Pa. 45, 963 A.2d 436, 442 (2009) (holding that where the defendant introduced ten mitigating factors under the catch-all mitigator, the jurors could only find one statutory mitigating circumstance, explaining that "the burden of each juror was to weigh the one aggravating circumstance unanimously found against any one mitigating circumstance that he or she may have found, not to weigh one aggravating circumstance against ten mitigating circumstances, as Appellant asserts.").

The trial court found no relevance in the proffered evidence, and we perceive no abuse of discretion in this regard. Evi-

Appellant's constitutional arguments are, therefore, waived. *See* Pa. R.A.P. 302(a).

dence of Appellant's wife's jail visits does not render any material fact about "the character and record of the defendant and the circumstances of his offense," 42 Pa.C.S. § 9711(e)(8), more or less probable. Indeed, contrary to Appellant's argument, the proffered evidence establishes nothing about Appellant's character. *See Commonwealth v. Lester*, 554 Pa. 644, 722 A.2d 997 (1998) (finding no abuse of discretion in trial court's refusal to permit the defendant to rely on his prior relationship with the victim as a mitigating circumstance) (disapproved of on other grounds in *Commonwealth v. Freeman*, 573 Pa. 532, 827 A.2d 385 (2003)); *Commonwealth v. Bardo*, 551 Pa. 140, 709 A.2d 871, 876 (1998) (upholding on relevancy grounds the trial court's decision not to permit the defendant to introduce mitigation evidence from a witness who would have testified that he was the defendant's friend, he visited the defendant in prison, and that the defendant had enriched his life).[7]

Further, Appellant's evidence is not relevant to rebut the Commonwealth's evidence of the statutory aggravating factor that Appellant had a "significant history of felony convictions involving the use or threat of violence to the person." 42 Pa.C.S. § 9711(d)(9). The Commonwealth produced evidence of this aggravating factor by proving that Appellant had been found guilty of the charges against him resulting from his assaults on Ms. Hurtt. Although Appellant speculates that his wife visited him in jail because she believed Appellant was innocent of the charges against him, even if he is correct in this regard, it would not overcome evidence that he was actually convicted of the underlying felonies. Moreover, Appellant's speculation about the victim's motives for visiting him are just that; without either party being able to question the deceased victim about her motivations, we are unable to

7. In his concurring opinion, Justice Saylor expresses his disagreement with this Court's decisions in *Lester* and *Bardo, each of which held that there is no* abuse of trial court discretion in barring admission of a defendant's proffered mitigation evidence of his character by showing positive relationships. Absent direct advocacy by the parties seeking to reconsider these holdings, they remain the binding precedent of this Court, and support our present rejection of the claim of trial court error.

validate Appellant's averment that she visited him because she did not believe the assault allegations by her daughter.

## VII. The Commonwealth's Notice
## of Aggravating Circumstances

Appellant next argues that the trial court erred in allowing the prosecution to introduce evidence in support of the aggravating circumstance that he had a significant history of felony convictions involving the use or threat of violence, *see* 42 Pa.C.S. § 9711(d)(9), because the Commonwealth failed to give timely notice of its intent to seek this aggravating circumstance as required by Rule of Criminal Procedure 802, Pa. R.Crim.P. 802, which is discussed below.

Appellant argues that because he was convicted of the underlying assault charges prior to being arraigned on the murder charges, and the Commonwealth did not give notice of its intent to prove the Section 9711(d)(9) aggravating circumstance at or before arraignment, it was forever barred from proving this aggravating circumstance in accord with Rule 802. Appellant further asserts that regardless of whether he was on constructive notice that the Commonwealth intended to pursue this aggravating circumstance, the Commonwealth was required to provide formal, timely notice. Relying on *Commonwealth v. Edwards*, 588 Pa. 151, 903 A.2d 1139 (2006), Appellant asserts that he was prejudiced by the Commonwealth's failure to provide timely notice, and that a new sentencing hearing is required. The Commonwealth argues there is no merit to this claim because it provided constructive notice and because Appellant suffered no prejudice.

Rule 801 (now Rule 802) provided, at the time of Appellant's trial, the procedure for providing notice of aggravating circumstances as follows:

The Commonwealth shall file a Notice of Aggravating Circumstances that the Commonwealth intends to submit at the sentencing hearing and contemporaneously provide the defendant with a copy of such Notice of Aggravating Circumstances. Notice shall be filed at or before the time of arraignment, unless the attorney for the Commonwealth

becomes aware of the existence of an aggravating circumstance after arraignment or the time for filing is extended by the court for cause shown.

Pa.R.Crim.P. 801.[8]

The comment to this rule provides, in relevant part, as follows:

This rule provides for pretrial disclosure of those aggravating circumstances that the Commonwealth intends to prove at the sentencing hearing. *See* Sentencing Code, 42 Pa.C.S. § 9711(d). It is intended to give the defendant sufficient time and information to prepare for the sentencing hearing. Although the rule requires that notice generally be given no later than the time of arraignment, it authorizes prompt notice thereafter when a circumstance becomes known to the attorney for the Commonwealth at a later time. The language "for cause shown" contemplates, for example, a situation in which, at the time of arraignment, an ongoing investigation of an aggravating circumstance must be completed before the attorney for the Commonwealth can know whether the evidence is sufficient to warrant submitting the circumstance at the sentencing hearing.

Id., cmt.[9]

 We discussed compliance with this rule in *Edwards*, where we summarized our precedent on this subject and concluded that "where the defendant has constructive notice of the aggravators due to the crimes charged, we have found no prejudice resulting from the Commonwealth's failure to provide timely or accurate notice." 903 A.2d at 1161–62 (collecting cases). Where there is no constructive notice, the Court will employ a prejudice analysis to determine whether relief is warranted. *Id.* We further explained that trial courts retain "considerable discretion to determine what sanctions, if any, are appropriate due to defective notice ..." *Id.* at 1162.

8. Rule 801 was renumbered to Rule 802 after Appellant's trial, although the text of the prior and current version of the rule is substantially similar in all respects.

9. The comment to the current version of Rule 802 is identical to that of former Rule 801.

Examining the record reveals that the trial court in this case did not abuse its discretion. The homicide criminal information was filed August 2, 2001. Attached thereto was the Commonwealth's notice of its intent to seek the death penalty, which identified the single aggravating circumstance found at Section 9711(d)(11) ("The defendant has been convicted of another murder committed in any jurisdiction and committed either before or at the time of the offense at issue."). At that time, Appellant's assault charges were pending, a fact of which he was certainly aware.

Appellant was equally aware that his conviction of the assault charges would provide the factual basis for the Commonwealth also to pursue the Section 9711(d)(9) aggravating circumstance. The Commonwealth informed Appellant of this fact at a September 20, 2001, conference, thereby putting Appellant on notice.[10] Appellant was convicted of the assault charges on December 14, 2001. He was sentenced on February 28, 2002, and arraigned on the murder charges the next day, March 1, 2002. On March 14, 2002, the Commonwealth amended its notice of its intention to seek the death penalty, adding the Section 9711(d)(9) aggravating circumstance. The trial court denied Appellant's motion to strike this aggravating circumstance.

As we have given trial courts "considerable discretion to determine what sanctions, if any, are appropriate due to defective notice," *Edwards*, 903 A.2d at 1162, we see no abuse of this discretion in the trial court's decision to permit the Commonwealth to amend its Notice on March 14, 2002, two weeks after arraignment, and a month before trial. The Commonwealth had already provided constructive notice, on the record, of its intent to seek the Section 9711(d)(9) aggravating circumstance, in September 2001, and Appellant offers nothing more than a bald assertion that he was prejudiced by the Commonwealth's amended Notice.

**10.** Indeed, the sexual assault and homicide cases were initially joined for trial until the prosecutor sought to sever them, for the express purpose of utilizing a conviction of the assault charges as an aggravating circumstance in the penalty phase of the murder trial.

## VIII. Prosecutorial Misconduct

■ Appellant's final claim is premised on several assertions of prosecutorial misconduct. Most of Appellant's arguments of prosecutorial misconduct are waived because Appellant did not object. Specifically, Appellant failed to object to the following: the prosecutor's opening statements in both the guilt and penalty phases; questions which Appellant characterizes as leading; the prosecutor's questioning of Detective Logan; and the prosecutor's questioning of another police officer about Appellant's behavior when he was arrested on May 21, 2000. *See Commonwealth v. Tedford,* 598 Pa. 639, 960 A.2d 1, 28–29 (2008) (holding that where defense counsel fails to object, there is no claim of "prosecutorial misconduct" as such available; rather, there is, instead, a claim of ineffectiveness for failing to object that may be raised in collateral proceedings); *Commonwealth v. Baumhammers,* 599 Pa. 1, 960 A.2d 59, 73 (2008) (". . . it is axiomatic that issues are preserved when objections are made timely to the error or offense."); *Commonwealth v. May,* 584 Pa. 640, 887 A.2d 750, 761 (2005) (holding that the "absence of contemporaneous objections renders" an appellant's claims waived); *Commonwealth v. Brown,* 467 Pa. 512, 359 A.2d 393 (1976) (holding that the lack of a timely objection waived issue for appellate review).

■ As to the final allegation of prosecutorial misconduct, Priscilla Hill stated during her victim impact testimony that the family had decided to donate Sean's organs. N.T. 4/18/2002, p. 84–85. Defense counsel objected on relevancy grounds, and the trial court inquired about the relevance of such testimony. Rather than respond, the prosecutor moved onto another line of questioning. Defense counsel did not ask that the witness's statement be stricken or for a limiting instruction. The specific testimony follows:

Q. First of all, were you with Sean in the hospital for the couple of days that he lingered?

A. Yes. Everyday.

Q. What effect did that experience have upon the family?

A. It was the most painful experience I've ever had in my life.

Q. Were there decisions that you had to make?

A. Yes.

Q. Was one of those decisions the decision to donate some of Sean's organs?

A. Yes.

Q. Do you know what was able to be donated?

A. His heart, his kidneys. I think his liver. Most of his organs. They said his organs were in perfect condition and most of them were donated.

Q. Do you know how many people he was able to help?

A. I think seven.

N.T. 4/18/2002, p. 85. Appellant objected after the last answer, which was sustained, and that line of questioning ceased.

■ As this testimony demonstrates, much of it came in with no objection from counsel. When counsel objected, it was solely to the last question, and it came after the witness had answered. The prosecutor immediately ceased this line of questioning and moved on to a different matter. Therefore, Appellant has largely waived this aspect of his claim by failing to object earlier. To the extent it is not waived, we view it as harmless error in this context. This court's consideration of claims of prosecutorial misconduct is centered on whether the defendant was deprived of a fair trial, not a perfect trial. *Commonwealth v. LaCava*, 542 Pa. 160, 666 A.2d 221, 231 (1995); *Commonwealth v. Holloway*, 524 Pa. 342, 572 A.2d 687, 693 (1990) (citation omitted). The trial court provided a victim impact instruction to the jury informing them of the limited purpose for which this evidence was introduced, directing them not to permit it to inflame their emotions or passions, and not to consider evidence of the impact of Appellant's crimes as a separate aggravating factor or as proof of the existence of any aggravating factor. N.T. 4/18/2002, p. 231–32. We cannot say that the question about how many people

benefited from the donation of the victim's organs deprived Appellant of a fair trial.

Accordingly, we affirm Appellant's judgment of sentence.[11]

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justices EAKIN, TODD, and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion.

## CONCURRING OPINION

Justice SAYLOR.

I join the majority opinion, subject only to the following reservations.

First, regarding Appellant's claim that the trial court erroneously failed to balance the probative value versus the prejudicial effect concerning the Commonwealth's evidence of uncharged arson, see Pa.R.E. 404(b)(2), the majority posits that the trial court "mentally engaged" in such balancing and admonishes that "[t]here is no requirement that [trial courts] record these mental deliberations on the record." Majority Opinion, at 161, 84 A.3d at 667. I do not doubt that there was some off-the record engagement of the issue, and I acknowledge there is no requirement for courts to contemporaneously explain their time-of-trial rulings on objections. Nevertheless, upon the filing of an appeal trial courts must provide an explanation for challenged rulings or point to the place in the record where such reasons may be found, see Pa.R.A.P. 1925(a), the salutary purpose being to provide a sufficient foundation for the ensuing appellate review.

In the present case, as I see it, the initial difficulty is that Appellant did not focus his trial-level objection on the balanc-

11. Within ninety days of the date that the sentence of death is upheld by this Court, the Prothonotary of this Court is directed to transmit to the governor's office the full and complete record of the trial, sentencing hearing, imposition of sentence and review by the Supreme Court pursuant to 42 Pa.C.S. § 9711(i).

ing aspect, but, rather, merely asserted that the Commonwealth's evidence of arson had no probative value whatsoever. *See* N.T., Apr. 16, 2002, at 4. Nevertheless, the trial court did appreciate that its ruling should subsume a balancing of probative value versus prejudicial effect. *See id.* at 9 (reflecting the trial court's allusion to this relevant requirement under Pa.R.E. 404(b)(2)). Accordingly, I believe the court should have provided a fuller explanation for its ruling upon the filing of an appeal and the lodging of a statement of matters complained of on appeal raising the Rule 404(b)(2) issue. Concomitantly, I would not fault Appellant for pointing to the deficiency in the analysis which was provided by the trial court. Rather, I would simply invoke the precept that a valid verdict may be affirmed for any reason appearing as of record and rely on the majority's able substantive assessment of the balancing inquiry. *See* Majority Opinion, at 159–61, 84 A.3d at 666–67.

Second, the majority appears to rely on *Commonwealth v. Bardo*, 551 Pa. 140, 709 A.2d 871 (1998), for the proposition that evidence having a tendency to prove that a capital defendant enriched another's life does not qualify as catch-all mitigation. *See* Majority Opinion, at 174, 84 A.3d at 675 (citing *Bardo*, 551 Pa. at 150–51, 709 A.2d at 876). One difficulty with *Bardo*, however, is that, although the Court recognized that the catch-all mitigator encompasses "any other evidence ... concerning the *character* and record of the defendant and the circumstances of the offense," 42 Pa.C.S. § 9711(e)(8), its holding failed to account for the character-based aspect. *Bardo*, 551 Pa. at 151, 709 A.2d at 876 (indicating that "[s]uch testimony has no relevance to the circumstances of the offense or appellant's record," with no mention of relevance to character).

The *Bardo* Court also cryptically couched the enrichment-based testimony as "speculative," analogizing to a previous decision in which the Court had found that proffered testimony from a professor and director of prison religious activities to the effect that the defendant might serve as an academic tutor or spiritual contributor was speculative. *See id.* at 151, 709 A.2d at 876 (citing *Commonwealth v. Henry*, 524 Pa. 135,

156, 569 A.2d 929, 939 (1990)). In this regard, another diffi-culty with *Bardo* is that the Court failed to distinguish be-tween predictive testimony, such as was proffered in *Henry*, and explanations of past behavior as an indication of character, the latter of which, in my view, plainly qualifies as catch-all mitigation. Indeed, the *Henry* Court itself observed, approv-ingly, that the professor and religious activities director had been permitted to "testify freely regarding [the] appellant's character and record." *Henry*, 524 Pa. at 156, 569 A.2d at 939.[1]

Here, I am sympathetic to Appellant's argument that the trial court should have permitted him to introduce evidence of the regular visits by his wife, Kathy Hairston, to him while he was incarcerated, at the very least to suggest that there was not a longstanding animus between the two. In terms of weight, however, I simply do not believe that the exclusion of the evidence had any material impact on the outcome of the jurors' decision-making.[2]

1. The majority also cites *Commonwealth v. Lester*, 554 Pa. 644, 722 A.2d 997 (1998), apparently to suggest that prior-relationship evidence gen-erally is irrelevant to the mitigation inquiry. *See* Majority Opinion, at 172–74, 84 A.3d at 674–75 (citing *Lester*, 554 Pa. at 664–65, 722 A.2d at 1006–07). However, the *Lester* disposition on the relevant issue is a two-sentence one, intertwined with the observation that the appellant gave "no explanation for his contention that his prior relationship with the victim somehow required a mitigating circumstance instruction." *Id.* I do not regard such a dismissive, error-review disposition as establishing some sort of category-wide precedent.

2. This reasoning goes more to the circumstances-of-the-offense aspect of catch-all mitigation, rather than to the defendant's character. As to the latter, Appellant posits that his wife's visits were relevant to demon-strate that he continued to need and want his family's support. *See* Brief for Appellant at 50. However, at least from my point of view, this seems to cast more sympathetic light upon the character of Appellant's wife than his own character.