J-S40040-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KIMBERLY N. REEVES | : | |
| | : | |
| Appellant | : | No. 883 EDA 2017 |

Appeal from the Judgment of Sentence February 10, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0000967-2016

BEFORE:   LAZARUS, J., DUBOW, J., and PLATT*, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 31, 2018**

Kimberly Reeves appeals from the judgment of sentence, entered in the Court of Common Pleas of Delaware County, after a jury convicted her of one count of aggravated assault – serious bodily injury,[1] one count of aggravated assault – serious bodily injury of an enumerated person,[2] two counts of aggravated assault – bodily injury of an enumerated person,[3] two counts of attempting to put an enumerated person in fear of imminent serious bodily

---

[1] 18 Pa.C.S. § 2702(a)(1).

[2] 18 Pa.C.S. § 2702(a)(2).

[3] 18 Pa.C.S. § 2702(a)(3).

---

injury,[4] two counts of simple assault,[5] two counts of attempting to put another in fear of imminent serious bodily injury by physical menace,[6] and two counts of recklessly endangering another person.[7]  Upon careful review, we affirm.

The trial court summarized the relevant facts underlying this case as follows:

> Briana Levanture (hereinafter [] Levanture) is employed by the Delaware County Children and Youth Services (hereinafter CYS) and has been so employed for the past three years.  Through her employment, [] Levanture had the occasion to become involved with [Reeves] as her caseworker.  On January 26, 2016, [] Levanture, along with her co-worker, [] Samantha Dawson (hereinafter [] Dawson), went to visit [Reeves] at her home, located at 279 Windermere Avenue in Lansdowne, PA.  The visit was scheduled via appointment made with [] Levanture's superior Kenneth Kelly; [] Levanture attempted an unannounced visit the week prior without success.
>
> [] Levanture and [] Dawson timely arrived for the scheduled home visit at 3:00 p.m.  [Reeves'] aunt, [Janet] McDaniel, let the women into [Reeves'] home; it was not unusual for [] McDaniel to be present during home visits.  [Reeves], [] Dawson, [] Levanture, and [] McDaniel all sat around the dining room table.  [] Levanture was aware that a [protection from abuse order ("PFA")] had been issued against [Reeves] earlier that day; however, without any responsibility or authority to inform [Reeves] of the PFA, [] Levanture did not mention the PFA to [Reeves] during the beginning of the meeting.
>
> Within the initial 40-45 minutes of the visit, [Reeves] did not inquire about the whereabouts of her children; however, once

---

[4] 18 Pa.C.S. § 2702(a)(6).

[5] 18 Pa.C.S. § 2701(a)(1).

[6] 18 Pa.C.S. § 2701(a)(3).

[7] 18 Pa.C.S. § 2705.

[she] became concerned that the children were not home from school at their usual time, [] Levanture made the decision to inform [Reeves] that the children were with their father pursuant to the PFA issued against her.

After hearing the news, [Reeves] became increasingly agitated, got up from the table and started pacing around the dining room and living room using profanity. [Reeves] called [] Levanture and [] Dawson 'bitches' and accused them of using crack cocaine. [She] told the women to get the 'fuck out of her house.'

At [Reeves'] demand, [] Levanture immediately began to gather her things and got up from the table. [] Dawson was in the process of answering a question posed by [] McDaniel when [Reeves] approached [] Levanture and punched her in the face, on the right side of her nose[,] causing [] Levanture to fall into the chair behind her. The assault did not stop there; [Reeves] continued to hit [] Levanture after she fell, leaving [] Levanture helpless and unable to exit the situation. [Reeves] did not stop assaulting [] Levanture despite [] Dawson and [] McDaniel yelling at [Reeves] to stop.

In order to help her co-worker, [] Dawson grabbed a hold of [Reeves'] shoulders, pulling her off of [] Levanture. [Reeves] then grabbed [] hold of [] Dawson's hair and began punching her face several times. [] McDaniel attempted to pull [Reeves] off of [] Dawson, which caused [] Dawson to fall to the floor. With [] [Mc]Daniel restraining [Reeves'] hands, [Reeves] kicked [] Dawson in the jaw while she lay on the floor.

[] Dawson screamed for [] Levanture to call 911. With the commotion, [Reeves'] oldest daughter (not a subject of the PFA) came down from upstairs asking what was going on and attempting to control [Reeves]. When [] Levanture and [] Dawson were finally able to free themselves from [Reeves'] assault, they called 911 and reported the situation; Lansdowne Police Department responded to the call within minutes. After [Reeves'] arrest, [] Levanture and [] Dawson were taken to the Lansdowne Police Department where their injuries were photographed and then both women went to Delaware County Memorial Hospital for treatment.

Trial Court Opinion, 10/25/17, at 1-3 (internal citations omitted).

At trial, the Commonwealth presented medical records from Delaware County Memorial Hospital that showed Levanture suffered fractured nasal bones and a sprain to the left shoulder joint. As a result of these injuries, Levanture missed several days of work and required one month of physical therapy for her shoulder. Levanture eventually went out on medical leave for her mental health and wellbeing following this incident in Reeves' home. Dawson's medical records indicated she suffered sprains to the cervical and thoracic spines and a laceration to her face. Therefore, Dawson missed several days of work for doctor's appointments and physical therapy, and lacked a full range of motion in her neck for a period of time. As a result of this incident, Dawson no longer works for CYS for her own wellbeing.

After a trial, held December 6-7, 2016, a jury found Reeves guilty of the above charges. On February 10, 2017, the trial court sentenced Reeves to twenty-four to forty-eight months' confinement and four years of consecutive probation. In March 2017, trial counsel filed a timely notice of appeal, but subsequently petitioned the trial court to withdraw, which request was granted. The Office of the Public Defender was appointed to represent Reeves and requested an extension of time to file a Pa.R.A.P. 1925(b) statement. Thereafter, the Office of the Public Defender filed an application to withdraw its representation due to a conflict. New counsel was appointed to assist Reeves, who filed another conflict petition and application to withdraw, which the trial court granted. On June 27, 2017 new counsel was again appointed, and filed an application for an extension in which to file a Rule 1925(b)

statement. The trial court granted that request and, on September 12, 2017, counsel filed a timely statement of matters complained of on appeal.

Reeves presents the following issues for our consideration on appeal:

1. Whether the [t]rial [c]ourt erred in denying [Reeves'] motion to charge the jury with [Reeves'] defense of [property justification], and denying [her] request to charge the jury with the definition of 'trespass,' when substantial evidence was adduced at trial to substantiate the giving of said instructions in that [Reeves] requested multiple times for the alleged victims to leave and said alleged victims did not leave upon request[?]

2. Whether the [t]rial [court] erred in not instructing the jury on the relationship between [Reeves'] requested charge of [a defense of property justification], and the instruction given for [the use of non-deadly force in self-defense justification], when the [t]rial [c]ourt denied [Reeves'] oral motion to charge the jury with [Reeve's] [defense of property justification][?]

3. Whether the [t]rial [c]ourt erred in limiting the jury's consideration of the issues in [Reeves'] case in violation of [Reeves'] rights under Article I, Section 9 of the Pennsylvania Constitution, and under the Sixth and Fourteenth Amendments to the United States Constitution, when the [t]rial [j]udge instructed the jury that '[t]his case is about an alleged assault and Defendant's contention that she acted in self-defense. That's what this case is about, nothing else'[?]

4. Whether the [t]rial [c]ourt abused its discretion in sustaining the Commonwealth's objections on grounds of legal conclusions to [Reeves'] cross-examination, when said questions were proper subjects of cross-examination[?]

5. Whether the [t]rial [c]ourt erred in denying [Reeves'] request to treat [] Ken Kelly as a hostile witness pursuant to Pa.R.E. 611(c) when [] Kelly was a hostile witness and/or a witness identified with an adverse party in that [] Kelly worked for the Delaware County Children and Youth Services, the same agency for which the alleged victims worked at the time of the alleged altercation[?]

6. Whether the [t]rial [c]ourt erred in sustaining the Commonwealth's objection during [d]efense [c]ounsel's closing argument, when the Commonwealth opened the door to [d]efense [c]ounsel's comment on why the Commonwealth did not call the doctor who diagnosed the victims for purposes of worker's compensation by eliciting testimony through the victims of said doctor's diagnoses, respectively, and by mentioning in its opening statement that the alleged victims 'went to the hospital to have their injuries tended to'[?]

Appellant's Brief, at 4-6.

Reeves' first two arguments concern the refusal of the trial court to administer jury instructions regarding her defense of property justification. Our standard of review is well-settled:

In reviewing a jury charge, we determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. We must view the charge as a whole; the trial court is free to use its own form of expression in creating the charge. Our key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations.

*Commonwealth v. Wise*, 171 A.3d 784, 787-88 (Pa. Super. 2017) (internal citations and quotations omitted).

Defendants are generally entitled to jury instructions they request, so long as they are supported by the evidence. *Commonwealth v. Hairston*, 84 A.3d 657, 668, (Pa. 2014). The Pennsylvania Supreme Court has explained:

[T]he reason for this rule is that instructing the jury on legal principles that cannot rationally be applied to the facts presented at trial may confuse them and place obstacles in the path of a just verdict. A criminal defendant must, therefore, establish that the trial evidence would reasonably support a verdict based on the

desired charge and may not claim entitlement to an instruction that has no basis in the evidence presented during trial.

*Id.* (internal citations and quotations omitted).  A trial court's refusal to give a requested charge does not merit reversal unless the defendant was prejudiced by that refusal.  ***Commonwealth v. Sandusky***, 77 A.3d 663, 667 (Pa. Super. 2013), quoting ***Commonwealth v. Thomas***, 904 A.2d 964, 970 (Pa. Super. 2006).

A defendant is entitled to the defense of property instruction where she believes force is immediately necessary "to prevent or terminate an unlawful entry or other trespass upon land."  18 Pa.C.S. § 507(a)(1).  Reeves has not demonstrated that she was entitled to such an instruction.

Levanture and Dawson were present in Reeves' home for a pre-arranged visit.  While Reeves herself did not physically admit the workers onto her property, the two were invited guests until about forty-five minutes into the meeting, when Levanture informed Reeves of the existence of the PFA against her.  Once Reeves became angry and demanded that Levanture and Dawson leave, the CYS workers did not attempt to stay longer than the time necessary to collect their belongings.  In the course of their attempted exit, Reeves began her assault.  Reeves presented no evidence that the two women lingered on her property or showed any sign of refusing to leave.  The sole evidence conceivably supporting a defense of property instruction came from Reeves' own testimony that she screamed for the women to leave.  Morever, there was no evidence that the force used by Reeves was necessary to eject the workers from her home.  Indeed, Reeves's own testimony indicated that

Levanture began to place her belongings into her bag after being asked to leave. N.T. Trial, 12/7/16, at 125 ("And she's sitting there with her legs crossed, and then I see her sliding what looks to be like her cell phone down in her bag."). In light of the foregoing, it was not an abuse of discretion for the trial court to refuse to give the defense of property justification.[8]

Reeves next argues the trial court erred by sustaining the Commonwealth's objections to defense counsel's cross-examination of Levanture on the grounds that the questions called for legal conclusions. Reeves argues that, in sustaining the objections, Reeves was improperly prohibited from eliciting testimony from Levanture regarding her personal perception of her injuries. Reeves is entitled to no relief.

> Questions regarding the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion. An abuse of discretion is not merely an error of judgment; rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.

***Commonwealth v. Trinidad***, 96 A.3d 1031, 1036 (Pa. Super. 2014) (internal citations and quotation marks omitted).

---

[8] Because we find that Reeves was not entitled to an instruction on defense of property, we need not address her next two claims that she was entitled to an instruction clarifying the interplay between the defenses of self-defense and defense of property and that the trial court improperly "limited" the jury's consideration of the issues.

Here, trial court sustained the Commonwealth's objections to the following questions on the basis that they called for legal conclusions because the phrasing of the questions tracked the statute:[9]

> DEFENSE COUNSEL:  At any point in time did you believe that you might lose the function of some type of body organ or—
>
> . . .
>
> DEFENSE COUNSEL:  In regard to your injury, you really didn't have any impairment [of] physical condition, did you?

N.T. Trial, 12/6/16, at 148, 149.   After the court sustained the Commonwealth's objections, counsel rephrased his questions as follows:

> DEFENSE COUNSEL:  Did you lose your sense of smell?
>
> WITNESS:  No.
>
> DEFENSE COUNSEL:  So your nose still works?
>
> WITNESS:  Yes.

*Id.* at 149.  Because counsel was able to effectively cross-examine the witness regarding her injuries, Reeves suffered no prejudice.

Reeves also claims that the trial court improperly sustained the Commonwealth's general objection to the following question:

> DEFENSE COUNSEL:  But you didn't find your injuries severe enough to require you to go to the hospital—
>
> COMMONWEALTH:  Objection Judge.

---

[9] *See* 42 Pa.C.S. § 6302 (defining serious bodily injury as "injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ").

*Id.* at 150. Defense counsel immediately rephrased the question as follows:

> DEFENSE COUNSEL: You didn't request to the police officer to go to the hospital immediately?
>
> WITNESS: No.

*Id.*

Again, Reeves was able to elicit the desired information from Levanture upon rephrasing the questions. Accordingly, even if the trial court erred in sustaining the Commonwealth's non-specific objection, Reeves cannot demonstrate that she suffered any prejudice as a result of the court's ruling.

Next, Reeves argues the trial court erred in denying her request to treat Ken Kelly as a hostile witness. Particularly, Reeves argues that Kelly should have been deemed a hostile witness based upon his employment at CYS, which rendered him "a witness identified with an adverse party." Appellant's Brief, at 37, quoting Pa.R.E. 611(c). Rule 611(c) provides:

> Leading questions should not be used on direct or redirect examination except as necessary to develop the witness's testimony. Ordinarily, the court should allow leading questions:
>
> (1) on cross-examination; and
>
> (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party. A witness so examined should usually be interrogated by all other parties as to whom the witness is not hostile or adverse as if under redirect examination.

Pa.R.E. 611(c).

A witness may be treated as hostile where "the testimony of the witness is unexpected, contradictory to earlier statements, and harmful to the party calling the witness, and where an injustice would result if the request to treat

the witness as hostile is denied." ***Commonwealth v. Bibbs***, 970 A.2d 440, 453 (Pa. Super. 2009), citing ***Commonwealth v. Lambert***, 765 A.2d 306, 357-59 (Pa. Super. 2000). Trial courts have wide discretion in controlling the use of leading questions, and a court's decision to allow or disallow them will not be reversed absent an abuse of discretion. ***Id.*** at 453.

Here, Reeves called Kelly to establish that Reeves had had previous, unfavorable interactions with Levanture in the course of Levanture's employment with CYS. His testimony was elicited to lend credibility to the claim that Reeves' assault was justified. The trial court observed that "Kelly's testimony was cooperative, not biased or unexpected, and his demeanor towards counsel was professional and appropriate. There was no reason to treat [] Kelly as a hostile witness solely because he was employed by CYS as well." Trial Court Opinion, 10/25/17, at 13. We can discern no abuse of discretion on the part of the trial court in refusing Reeves' groundless request to treat Kelly as a hostile witness.

Finally, Reeves argues the trial court erred in sustaining a Commonwealth objection to defense counsel's closing argument. The relevant portion of the closing is as follows:

> DEFENSE COUNSEL: But, funny, the doctor [Levanture and Dawson] go to the [day after the assault] finds fractures, spinal injuries, and all these other injuries. This is a determination you can make, but I don't think the emergency room would have missed those things. I don't think they would have. If there were serious injuries, the emergency room would have caught that. They wouldn't have discharged them with just ibuprofen . . .[.] But funny, the doctor who's responsible for putting people on worker's [compensation] and some other things, he finds a host

of injuries. Why didn't that doctor appear? I argue that he probably knew—

COMMONWEALTH: Objection, Judge.

THE COURT: Basis?

COMMONWEALTH: Speculation with regard to why evidence wasn't presented.

THE COURT: Sustained.

N.T. Trial, 12/7/16, 205-06.

At trial, both Levanture and Dawson testified as to their injuries and diagnoses; neither witness's testimony provoked an objection from defense counsel. There is no evidence that Reeves ever subpoenaed the treating physicians to assess what they did or did not know, and they did not testify at trial. A closing argument must be based upon evidence in the record or reasonable inferences therefrom. ***Commonwealth v. Culver***, 51 A.3d 866, 878 (Pa. Super. 2012) (internal citations omitted). Here, there was no evidence of record to support counsel's speculative statements. Accordingly, the trial court properly sustained the Commonwealth's objection, and Reeves' final claim is meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/31/18

- 12 -