J-S10022-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT |
| Appellant | : | OF PENNSYLVANIA |
| | : | |
| V. | : | |
| | : | |
| | : | |
| JEFFREY DENNIS | : | |
| Appellee | : | |
| | : | No. 739 EDA 2018 |

Appeal from the Judgment of Sentence January 25, 2018
In the Court of Common Pleas of Montgomery County
Criminal Division at No: CP-46-CR-0003150-2016

BEFORE: GANTMAN, P.J.E., STABILE, J., and COLINS, J.*

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 1, 2019**

Appellant, Jeffrey Dennis, appeals from his judgment of sentence of eleven and a half to thirty-two years' imprisonment for possession with intent to deliver cocaine[1] and related drug and firearm offenses. Appellant challenges the trial court's decision to admit evidence of three controlled purchases that a confidential informant ("CI") made from Appellant in the weeks leading up to his arrest. We conclude that the trial court properly admitted this evidence of other crimes under Pa.R.E. 404(b), and we affirm.

During February and March of 2016, as part of a criminal investigation, the Springfield Township Police Department used a CI to make three controlled purchases of cocaine from Appellant. In each instance, the CI purchased cocaine from Appellant inside a red Chrysler 200. Prior to each purchase,

_____

* Retired senior judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

police officers searched the CI and provided him with marked U.S. currency to use in the transaction. The police conducted surveillance of both Appellant and the CI immediately before, during and after the controlled purchases. They observed Appellant leaving his residence at 1136 Easton Road, Apartment B, Roslyn, Pennsylvania, entering a red Chrysler 200, and driving to the pre-arranged meeting location. They also observed the CI proceed to the meeting location, enter the red Chrysler 200 and return to the officers with cocaine.

Based on this investigation, the police obtained an arrest warrant for Appellant and search warrants for 1136 Easton Road, Apartment B and the red Chrysler 200. On March 17, 2016, the police arrested Appellant and executed the search warrants. The search of the vehicle uncovered two loaded firearms hidden under the hood. The police found Appellant's wallet in the car, which contained his social security card, a Costco card with his name and picture and a TD bank card with his name on it. The police also found a prescription for Adderall in Appellant's name and a hotel receipt, dated the day before, bearing his name. Inside the one bedroom apartment, the police discovered that the living room was used as a bedroom; there was a pillow and comforter on the couch, a dresser and portable wardrobe containing clothes and personal items, numerous unused empty baggies, a gun silencer, a scale and a cutting agent. In the kitchen next to the living room, the police found a digital scale containing white residue, a Glock handgun loaded with a magazine containing 10 rounds, another magazine containing 22 rounds and

other cutting agents. In the bedroom, the police located a safe inside the closet. There were packaging materials on top of the safe; inside were additional packaging materials, a loaded Taurus revolver, additional ammunition for the revolvers, additional ammunition for the Glock handgun and another magazine for the Glock. Lastly, the police seized 31 blue packets of cocaine and $2,300 in cash from Appellant's person.

Prior to trial, Appellant's mother and her boyfriend told the police that they slept in the bedroom and Appellant slept in the living room. They said that the red Chrysler 200 belonged to Appellant, and they purchased the car for him because he did not have a driver's license. They further claimed that none of the firearms found in the apartment or car belonged to them, and the safe, scales, and white powder substances belonged to Appellant.

The Commonwealth did not charge Appellant with any crimes stemming from the CI's three controlled purchases of cocaine. The Commonwealth did, however, move for admission of these controlled purchases as other crimes evidence under Pa. R.E. 404(b). The trial court granted the Commonwealth's motion over Appellant's objection.

During trial, Appellant testified that none of the drugs, weapons or paraphernalia belonged to him. Moreover, after receiving immunity, Appellant's mother and boyfriend attempted to help Appellant by presenting a different version of events than they gave prior to trial. They both testified that Appellant did not reside at 1136 Easton Road, and that the Chrysler was

not his. The mother's boyfriend also claimed that some of the contraband could have been his.

The jury found Appellant guilty of multiple drug- and gun-related charges. Following sentencing, Appellant filed timely post-sentence motions, which the trial court denied, and a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises a single issue in this appeal: "Was it an abuse of discretion for the Court to permit the introduction of several uncharged controlled purchases as prior bad acts under Pennsylvania Rule of Evidence 404(b)?" Appellant's Brief at 2. We review orders granting admission of evidence for abuse of discretion. *Commonwealth v. Antidormi*, 84 A.3d 736, 749 (Pa. Super. 2014).

Pa.R.E. 404(b)(1) provides: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." This evidence, however, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). In addition, other crimes evidence is admissible "where the acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development." *Commonwealth v. Green*, 76 A.3d 575, 583 (Pa. Super. 2014). When offered for one of these legitimate purposes, prior bad act evidence is admissible if its probative value outweighs its potential for "unfair

prejudice." ***Commonwealth v. Hairston***, 84 A.3d 657 (Pa. 2014); ***see also*** Pa.R.E. 404(b)(3). Unfair prejudice means "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." ***Commonwealth v. Tyson***, 119 A.3d 353, 359 (Pa. 2015). The court "is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." ***Id.*** at 360. Moreover, a cautionary instruction can ameliorate the prejudicial effect of the proffered evidence, because jurors are presumed to follow the court's instructions. ***Id.***

The controlled purchases in this case were relevant to establish the history and natural development of the facts. They formed an integral part of the criminal investigation, because the police referred to them in the affidavits of probable cause underlying the search warrants for Appellant's residence and vehicle. Evidence of these purchases taught the jury about the course of the investigation that culminated in Appellant's arrest. ***Commonwealth v. Dillon***, 925 A.2d 131, 139 (Pa. 2007) (res gestae evidence admissible to explain events surrounding criminal conduct so that case presented to jury does not appear in a vacuum). This evidence also was relevant to establish Appellant's intent to deliver the drugs found on his person and in the apartment. ***Commonwealth v. Echevarria***, 575 A.2d 620, 623 (Pa. Super. 1990) (evidence that informant purchased cocaine from defendant on two

- 5 -

occasions shortly before defendant's arrest for third sale was relevant to charge of possession of cocaine with intent to deliver). Finally, this evidence was relevant to establish Appellant's possession of the drugs and weapons found in the car and apartment, thus countering Appellant's defense (and the trial testimony of Appellant's mother and her boyfriend) that none of the drugs, guns, packaging materials or cutting agents belonged to him. In short, this evidence had considerable probative value.

Appellant argues that the other crimes evidence was unreliable, and therefore prejudicial, because the CI did not testify and was not identified during trial, and because the police officers were not in the car during the purchases. We disagree.

To balance the probative value of other crimes evidence against its prejudice, we must consider factors such as the strength of this evidence, the similarities between the crimes, the time lapse between crimes, the need for other crimes evidence, the efficacy of alternative proof of the charged crime, and the degree to which the evidence probably will rouse the jury to overmastering hostility. *Commonwealth v. Kinard*, 95 A.3d 279, 286 (Pa. Super. 2014). The record reflects that the other crimes evidence herein was reliable. Immediately before each controlled purchase, the police searched the CI and found no controlled substances on his person, gave him marked currency, and kept him under constant surveillance before, during and after the arranged meeting with Appellant. Each time, the police observed the CI enter the red Chrysler 200 and then return to the police with cocaine.

Moreover, each time, Appellant was under constant police surveillance before and during the controlled purchases. Police officers observed Appellant leave his residence at 1136 Easton Road, Apartment B, get into the driver's seat of his red Chrysler 200, and drive to the designated meeting location.

This evidence also satisfies **Kinard's** other criteria. As Appellant concedes in his brief, the time lapse of several weeks between the controlled purchases and execution of the search warrant was insignificant. Appellant's Brief at 9. Appellant further concedes that the prior bad acts of selling drugs to the CI are essentially identical to the charge of possession with intent to deliver. *Id.* Finally, the need for this evidence was great. Appellant's theory of the case was that the confiscated drugs, guns and paraphernalia did not belong to him. To this end, he testified that (1) the police did not find 31 baggies of cocaine on his person upon his arrest, (2) none of the contraband found inside the apartment belonged to him, (3) he did not reside at the residence, (4) the handguns found in the red Chrysler did not belong to him, and (5) the car did not belong to him. Appellant's mother and her boyfriend also tried to distance Appellant from the residence and the vehicle. The boyfriend even tried to convince the jury that some of the contraband belonged to him instead of Appellant. Thus, the Commonwealth needed the other crimes evidence to establish Appellant's possession of drugs, guns and contraband found in the residence, in the vehicle, and on Appellant's person, and also to establish his intent to possess and deliver the drugs.

Finally, the trial court ameliorated any prejudice by instructing the jury that the other crimes evidence was admissible for the limited purposes of determining Appellant's intent and providing the full history of the case. The court cautioned that the jury was not to regard the evidence as showing that Appellant was a person of bad character or of criminal tendencies.

For all of these reasons, the court acted within its discretion by admitting the other crimes evidence. ***Commonwealth v. Hairston***, 84 A.3d 657, 665-66 (Pa. 2014) (in first-degree murder prosecution, probative value of other crimes evidence of defendant's act of setting his house on fire after killing his wife and son inside home, was not substantially outweighed by danger of unfair prejudice; arson evidence was introduced for legitimate purposes, was not so prejudicial that it likely diverted jury's intention away from its duty of weighing the evidence impartially, and court provided limiting instruction about how jury should consider evidence of arson, thereby ameliorating its prejudicial effect).

Judgment of sentence affirmed.
Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/1/19

- 8 -