J-S45014-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS A. HAMILTON | : | |
| | : | |
| Appellant | : | No. 883 MDA 2023 |

Appeal from the Judgment of Sentence Entered May 23, 2023
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0000627-2022

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED: FEBRUARY 12, 2024**

Thomas A. Hamilton appeals from the judgment of sentence of thirty-three to sixty-six months of imprisonment imposed after he was convicted of, *inter alia*, aggravated assault.  Appellant's counsel, William C. Bispels, Esquire, has filed a motion to withdraw and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We affirm the judgment of sentence and grant counsel's motion to withdraw.

In February 2022, Appellant physically attacked Metra Maiwandi at the Berks County residence that they shared with other individuals.  Ms. Maiwandi had previously lived at the house with her ex-boyfriend, Cole Haldeman, a

---

[*] Former Justice specially assigned to the Superior Court.

member of the Pagans Motorcycle Club ("Pagans"). Through Mr. Haldeman and another member of the Pagans, Ms. Maiwandi became acquainted with Appellant, a former member of the Pagans. After Ms. Maiwandi and Mr. Haldeman's romantic partnership ended, Ms. Maiwandi continued to reside at the house. Appellant moved into Ms. Maiwandi's residence at Mr. Haldeman's behest in late 2021 and, around the same time, other individuals affiliated with the Pagans also moved into the house.

Ms. Maiwandi and Appellant had not frequently communicated in the weeks prior to the assault, as, among other problems, Appellant had not been paying the agreed-upon rent. On February 8, 2022, Mr. Haldeman informed Appellant that he was terminating the lease and Appellant would have to leave. Two days later, Appellant cut Ms. Maiwandi's ethernet cord while she was working from home in retaliation for her complaints about his not paying rent and water dripping from the ceiling as a result of his failure to ensure the shower curtain was in place. Ms. Maiwandi then asked Appellant why he cut the ethernet cord, after which Appellant assaulted her. She sustained numerous injuries, including a broken nose, as Appellant beat her, kicked her, and doused her with pepper spray. While Appellant was pummeling Ms. Maiwandi, he told her that she should not have "messed with" a member

of the Pagans or his property.[1]  **See** N.T. Trial, 2/1-2/23, at 80.  Both Ms. Maiwandi and Appellant were treated at the hospital after the assault and interviewed by police.

During the ensuing trial, Appellant pursued a justification defense.  He testified that, suffering from a disability related to his back, he struck Ms. Maiwandi with his cane only in self-defense after she knocked him over.  However, the Commonwealth produced evidence that, while at the hospital, Appellant sent a text message to another member of the Pagans stating that Ms. Maiwandi should not have touched a Pagan.  **Id**. at 241.  Appellant explained the message thusly:  "She attacked me.  She put her hands on me.  I'm a retired Pagan."[2]  **Id**. at 241.

Prior to trial, Appellant filed a motion *in limine* to preclude the introduction of evidence or testimony that Appellant was previously affiliated with the Pagans.  Appellant argued that testimony that he once belonged to a motorcycle group frequently associated with criminal activity constituted propensity evidence, was more prejudicial than probative, and should be

---

[1] Ms. Maiwandi testified that the "property" Appellant referred to while battering her was possibly his friend or his friend's personal items.  However, Ms. Maiwandi denied ever attacking Appellant's friend or interfering with her property.  **See** N.T. Trial, 2/1-2/23, at 57, 80-81.

[2] Furthermore, Appellant had previously informed Mr. Haldeman of the ongoing dispute between Ms. Maiwandi and himself.  **See id**. at 150-151.  Appellant articulated that he had requested Mr. Haldeman, a current Pagan, to handle the dispute that he had with Ms. Maiwandi because that would have more appropriately comported with Pagan hierarchy.  **See id**. at 241-42.

excluded under Pennsylvania Rule of Evidence 404(b). *See* Motion *in Limine*, 1/25/23, at 1-2. The trial court denied the motion.

At trial, the jury heard the abovementioned references concerning Appellant's membership in the Pagans. After the closing arguments, the trial court issued a cautionary instruction to the jury that any evidence or testimony concerning Appellant's membership or past membership in the Pagans was not offered to demonstrate that Appellant had a bad character or a propensity to commit criminal acts. *See* N.T. Trial, 2/1-2/23, at 306-07. A jury found Appellant guilty of aggravated assault, and he was sentenced as hereinabove indicated. This timely appeal followed. The trial court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant complied. Thereafter, the trial court issued a Rule 1925(a) opinion.

Counsel filed in this Court both an *Anders* brief and a motion seeking leave to withdraw as counsel. The following legal principles guide our review:

> Direct appeal counsel seeking to withdraw under *Anders* must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an *Anders* brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof.

> *Anders* counsel must also provide a copy of the *Anders* petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention.

> If counsel does not fulfill the aforesaid technical requirements of *Anders*, this Court will deny the petition to

- 4 -

withdraw and remand the case with appropriate instructions (*e.g.*, directing counsel either to comply with **Anders** or file an advocate's brief on Appellant's behalf). By contrast, if counsel's petition and brief satisfy **Anders**, we will then undertake our own review of the appeal to determine if it is wholly frivolous. If the appeal is frivolous, we will grant the withdrawal petition and affirm the judgment of sentence. However, if there are non-frivolous issues, we will deny the petition and remand for the filing of an advocate's brief.

**Commonwealth v. Cook**, 175 A.3d 345, 348 (Pa.Super. 2017) (cleaned up).

Our Supreme Court has further detailed counsel's duties as follows:

[I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, **supra** at 361.

Based upon our examination of counsel's petition to withdraw and **Anders** brief, we conclude that counsel has complied with the technical requirements set forth above.[3] As required by **Santiago**, counsel set forth a brief history of the case with citations to the record, referred to an issue that arguably supports the appeal, stated his conclusion that the appeal is frivolous, and cited pertinent statutory law. **See Anders** brief at unnumbered 6-14. Therefore, we shall undertake "'a full examination of the proceedings

---

[3] Appellant did not file a response to counsel's petition.

and make an independent judgment to decide whether the appeal is in fact wholly frivolous.'" ***Commonwealth v. Flowers***, 113 A.3d 1246, 1249 (Pa.Super. 2015) (quoting ***Santiago***, ***supra*** at 354 n.5).

The sole issue arguably supporting an appeal cited by Appellant's counsel is whether the trial court "abused its discretion in denying a motion *in limine* and allowing the jury to hear testimony that Appellant was a former member of the Pagans[.]" ***Anders*** brief at unnumbered 4 (cleaned up). Specifically, he asserts: "The testimony that Appellant beat, kicked, and pepper[-]sprayed [Ms. Maiwandi] was sufficient to inform the jury of what occurred and the testimony that he was a former Pagan was evidence of a prior bad act that should have been precluded under Rule 404(b)." ***Id***. at unnumbered 6 (cleaned up).

In considering the denial of a motion *in limine*, we employ an evidentiary abuse of discretion standard unless the question is purely one of law. ***Commonwealth v. Moser***, 999 A.2d 602, 605 (Pa.Super. 2010). It is well-settled that a trial court's evidentiary rulings are afforded great deference. As such, "[w]e give the trial court broad discretion, and we will only reverse a trial court's decision to admit or deny evidence on a showing that the trial court clearly abused its discretion." ***Commonwealth v. Talbert***, 129 A.3d 536, 539 (Pa.Super. 2015) (cleaned up). An abuse of discretion "is not merely an error in judgment, but an overriding misapplication of the law, or the

exercise of judgment that was manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Id*.

Under Pennsylvania law, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b). As a general rule, all relevant evidence is admissible and all irrelevant evidence is inadmissible. *See* Pa.R.E. 402. However, even relevant evidence may be excluded if its probative value is outweighed by the danger of, *inter alia*, unfair prejudice. *See* Pa.R.E. 403. "Unfair prejudice means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." ***Commonwealth v. Wright***, 961 A.2d 119, 151 (Pa. 2008) (cleaned up).

Furthermore, concerning Appellant's pre-trial challenge to the evidence regarding his former membership in the Pagans as improper evidence of criminal activity, this Court has stated that:

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that the defendant acted in conformity with these past acts or to show criminal propensity. However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident.
>
> In determining whether evidence of prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

*Commonwealth v. Sitler*, 144 A.3d 156, 163 (Pa.Super. 2016) (citation omitted); *see also* Pa.R.E. 404(b)(1) (prohibiting "[e]vidence of a crime, wrong, or other act" when such evidence is offered to show "that on a particular occasion the person acted in accordance with the character" shown by that crime, wrong, or other act).

The trial court found that the challenged testimony concerning Appellant's membership in the Pagans was admissible and relevant in establishing context and motive for the assault, because Appellant implied that he pummeled Ms. Maiwandi for antagonizing a former Pagan. Further, the trial court stated references to the Pagans formed "part of the history and natural development of the events" in the instant case. *Id*. (citing *Commonwealth v. Dula*, 262 A.3d 609, 626-627 (Pa.Super. 2021)). Since Appellant's membership in the Pagans was centrally connected to the facts surrounding the assault in the case *sub judice*, the trial court determined that the probative value of the evidence outweighed any prejudice suffered by the Appellant. *See* Trial Court Opinion, 8/1/23, at 5.

Upon review, we discern no abuse of discretion with the trial court's decision to deny Appellant's motion *in limine* and admit the references to Appellant's membership in the Pagans.[4] The testimony that Appellant was a

---

[4] To the extent that Rule 404(b) is implicated in the instant case, any reference to Appellant being in the Pagans did not tend to "convict the appellant only by showing his propensity to commit crimes." *Commonwealth v. Brown*, 186
*(Footnote Continued Next Page)*

retired Pagan was relevant to the history and natural development of the case, as Appellant's living arrangement was due to his connection with Mr. Haldeman and his membership in the Pagans. Almost every person connected with the case had an affiliation with the Pagans including Ms. Maiwandi, whose ex-boyfriend was a current member of the Pagans. Since the circumstances surrounding the assault and the people involved were inextricably linked to the Pagans, testimony and evidence mentioning Appellant's membership in that organization were admissible and relevant. Moreover, Appellant's indication that he assaulted Ms. Maiwandi because she "messed with" a Pagan and his property belied his justification defense. Accordingly, the trial court's determination to admit testimony and evidence that Appellant was a former Pagan was not manifestly unreasonable, as being affiliated with the Pagans was critical to understand the context, history, and development of the facts of the case, culminating in the serious attack perpetuated by Appellant.

In a similar vein, we agree with the trial court that Appellant was not unduly prejudiced by the admission of this evidence. *See* Trial Court Opinion,

_____

A.3d 985, 993 (Pa.Super. 2018) (cleaned up). Indeed, the Commonwealth never introduced evidence suggesting that membership in the Pagans entailed an increased likelihood of Appellant committing crimes. Rather, Appellant's membership in the Pagans was central to his reason for being in the house where the assault occurred. Moreover, most individuals connected to this case, including the victim, knew each other because of the Pagans and had connections to the Pagans.

8/1/23, at 5. The association of the residence's various occupants with the Pagans did not divert "the jury's attention away from its duty of weighing the evidence impartially." *Commonwealth v. Hairston*, 84 A.3d 657, 666 (Pa. 2014). Moreover, any potential for unfair prejudice was alleviated by the trial court's cautionary instruction to the jury at the end of trial that evidence of Appellant's membership in the Pagans was not offered to demonstrate that Appellant had a propensity to commit bad acts or crimes. *See* N.T. Trial, 2/1-2/23, at 306-307. Our Supreme Court has held that "when examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence." *Hairston*, *supra* at 666. Further, this Court has stated that "it is presumed that jurors will follow the instructions provided by the court." *Commonwealth v. Gilliam*, 249 A.3d 257, 274 (Pa.Super. 2021). Hence, Appellant was not unduly prejudiced by the admission of the evidence that he was once affiliated with the Pagans.

Finally, our "simple review of the record to ascertain if there appear[s] on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated[,]" has revealed no additional issues that counsel failed to address. *Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa.Super. 2018) (*en banc*). Therefore, we affirm the judgment of sentence and grant counsel's motion to withdraw.

Motion of William C. Bispels, Esquire, to withdraw as counsel is granted.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/12/2024