J-A07034-24

2024 PA Super 305

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD GARNETT | : | No. 706 MDA 2023 |

Appeal from the Order Entered April 12, 2023
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0002265-2021

BEFORE:   STABILE, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED: DECEMBER 18, 2024**

The Commonwealth appeals[1] from the April 12, 2023 order denying its motion filed pursuant to Pa.R.E. 404(b) which sought to introduce evidence of Appellee's two prior convictions for involuntary deviate sexual intercourse ("IDSI") with a child.[2]  After careful review, we reverse the order and remand for proceedings consistent with this opinion.

The trial court summarized the relevant facts and procedural history of this case as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] The Commonwealth certified, pursuant to Pa.R.A.P. 311(d), that the trial court's April 12, 2023 order will terminate or substantially handicap the prosecution.

[2] 18 Pa.C.S.A. § 3123(b).

The Commonwealth presented the testimony of J.D. at the June 29, 2021 preliminary hearing. The twenty-three-year old testified that he was the victim of sexual assaults at the Roaring Brook Baptist Church in Hunlock Creek when he was approximately seven or eight years old. J.D. testified that he attended the church with his parents and that for a few months he participated in a youth bible study called Awana class once a week. He thought that there were about ten or fifteen children in the class. He said the children would meet on the main floor of the church and a teacher would take them downstairs to a classroom in the basement. He said the class lasted about an hour and that it would be supervised by a female teacher.

J.D. said that on more than one occasion he was taken out of the classroom by an individual he described as "an older gentleman, middle-aged. He – at the time, he was round-faced, salt-and-pepper scuff." He said he was the only child removed from the classroom by that person. He recalled the first time he was taken out of the classroom and said that he was escorted down the hall of the basement into a smaller room on the other side of the bathroom. He said it was dark and he didn't see much. He testified that when he and the man were in the room, the man would lift up "like a black robe, a dress, something along those lines" and remove his pants. He said that after the man removed his pants he would instruct him to touch and stroke the man's penis with J.D.'s hand. He said after it was over, the man brought him back to the classroom. He said the same thing happened on more than one occasion. He testified that when the man spoke to him during the assaults, it was "mostly religious" and he said things like "it was between us and God" and "it's God's will." However, on one of those occasions, he said the man told J.D. to insert his penis into his mouth. He said after the man "finished" – or ejaculated – the man told J.D. to go to the bathroom to clean up and then escorted him back to the room. J.D. did not tell anyone about the assaults until he discussed it with his mother when he was eighteen years old. She called the police immediately and J.D. first met with officers to discuss

the incidents on February 24, 2017. He said he described his assailant as "middle-aged, heavyset, round face, salt-and-pepper beard, and glasses." He told police the assailant was the pastor, a man named Dan[iel] Brubaker. He said at some point in time he was provided two photographs by police and asked if either looked like it could be the assailant. He was able to tell that the photograph of Daniel Brubaker was "not it." He said the second photograph was "almost a spitting image" of the man who assaulted him.

The Commonwealth also presented the testimony of Corporal Robert Betnar, who has been employed as a Pennsylvania State Trooper for twenty-three years. Trooper Betnar testified that he investigated the allegations made by J.D. After reviewing documents obtained from the Roaring Creek Baptist Church, he was able to confirm that J.D. attended Awana classes at the church "in and around the year 2006." He was also able to confirm that a man named Daniel Brubaker had been a pastor at the church during the time J.D. attended classes. He testified that the First Daniel Brubaker did not fit the physical description of the man that assaulted J.D. Corporal Betnar testified that he ran the name "Daniel Brubaker" through the Commonwealth of Pennsylvania database and found that there were three "Daniel Brubakers" in the database. He testified that he printed the three pictures and had them with him during an interview with J.D. Corporal Betnar said his plan was to show J.D. the photographs at some point during the interview, but very early on, J.D. reached over and pointed at a picture. He testified that J.D. said, "That's the individual that did this to me." He also testified that after looking at the pictures, J.D. specifically indicated that the First Daniel Brubaker was not his assailant.

The photograph J.D. pointed to was a picture of a man also named Daniel Brubaker, who is a minister in the Lancaster area ("The Second Daniel Brubaker"). Corporal Betnar was able to determine from his

investigation that J.D. had no connection to the Second Daniel Brubaker.

Corporal Betnar testified that as the investigation continued, the police interviewed parents and students who were members of the Awana classes. [Appellee's] name surfaced during the investigation and police produced his driver's license photograph. Corporal Betnar said that the similarities between the photograph of the Second Daniel Brubaker and [Appellee] were striking and that the two "appeared to be twins at points."

Corporal Betnar testified that during the relevant time period, [Appellee] had been the games instructor with the Awana classes. The corporal said that sometime during the Awana classes [Appellee] would play and engage in games with the students. He further testified that during the course of the investigation, police were not able to identify anyone else matching the physical description given by J.D.

On August 26, 2021, the criminal information was filed charging [Appellee] with one count of indecent assault – person less than thirteen years of age; one count of statutory sexual assault; one count of [IDSI] with a child; one count of endangering the welfare of children; and one count of corruption of minors. [*See* 18 Pa.C.S.A. §§ 3126(a)(7), 3122.1, 3123(b), 4304(a), and 6301(a)(1), respectively.]

On October 31, 2022, the Commonwealth filed a motion pursuant to Pa.R.E. 404(b), seeking to introduce evidence of [Appellee's] two prior convictions at trial. On January 19, 2023, [Appellee] filed a motion to quash, alleging that the Commonwealth did not sufficiently establish [Appellee] as the perpetrator of the offenses against J.D. at the preliminary hearing. On February 13, 2023, a hearing was held before this court on both motions.

At the hearing, the Commonwealth presented the testimony of Trooper Andrew Morgantini in support of

its 404(b) motion. Trooper Morgantini testified that he was involved in the investigation surrounding J.D.'s complaint. Corporal Betnar had already begun the investigation when Trooper Morgantini became involved. The trooper testified that his assignment was to interview students who had been in the Awana classes at the same time as J.D. He testified that while he was reviewing a report, Trooper Weaver was interviewing one of the students when the student described a man he had been alone with in the basement. The child's mother heard the description and said "that sounds like [Appellee]."

Trooper Morgantini said that in addition to interviewing several students, he also interviewed the mother of two of the students. As he was interviewing her, she described teachers who were associated with the Awana classes. She described [Appellee] as the games director and said that she was related to him. The trooper said she told him that [Appellee] had sexually assaulted a seven-year-old girl approximately 40 years ago. She then told him that a woman named "T.K." would have more information about the incident.

Trooper Morgantini testified that, after receiving the information that [Appellee] may have been involved in a different sexual assault, an investigation into that claim was started. During the course of that investigation, the trooper learned that [Appellee] sexually assaulted two minor victims. On March 1, 2021, [Appellee] pled guilty at case number 2335 of 2020 to two counts of IDSI – victim less than 16 years of age – for criminal acts taking place between 35 and 40 years ago. [Appellee was sentenced in connection with these crimes on June 17, 2021.] The victims were V.E., [Appellee's] stepdaughter, and T.K., his niece by marriage. The affidavit of probable cause for case number 2335 of 2020 sets forth the following facts: Trooper Morgantini interviewed T.K. on December 11, 2018. She said she had difficulty remembering details but that she clearly remembers being assaulted by [Appellee] at least one time, but that it may have happened a couple of times. She did

not know how old she was at the time but said that the assault occurred before she was in middle school. She said the assault occurred in the bedroom of [Appellee's] house while she was staying there overnight with [Appellee's] stepdaughter V.E. She said he penetrated her anally with his penis. She did not remember if she was assaulted other ways as well. She also said that V.E. was present during the assault.

Trooper Morgantini interviewed V.E. on July 7, 2020. She said that she was sexually assaulted by her stepfather [Appellee] on multiple occasions from the ages of ten to thirteen and possibly earlier. She said these assaults took place in her bedroom every Friday between 5:00 p.m. and 10:00 p.m., when her mother went grocery shopping with her grandmother and her aunt. She said the incidents always involved oral sex and that he never penetrated her vaginally or anally. She said there was an incident when he came in her bedroom, kissed her buttocks, and she performed oral sex on him. She said the incidents stopped when she started "developing." V.E. said she believed that T.K. was also sexually assaulted by [Appellee].

Trial court opinion, 7/26/23 at 1-6 (citations to notes of testimony, parentheticals, and footnotes omitted).

On April 12, 2023, the trial court entered an order denying both Appellee's "motion to quash," which it treated as a motion for writ of **habeas corpus**, and the Commonwealth's motion to introduce Rule 404(b) evidence. Thereafter, on May 12, 2023, the Commonwealth filed a timely notice of appeal, indicating that the April 12, 2023 order will terminate or substantially handicap its prosecution.[3]

---

[3] The Commonwealth and the trial court have complied with Pa.R.A.P. 1925.

The Commonwealth raises the following issue for our review:

> Is the Commonwealth permitted to offer relevant evidence about the course of a police investigation for the limited purpose of showing the manner in which the police initially identified [Appellee] and rebutting a misidentification defense merely because that evidence relates to [Appellee's] prior crimes, even though the evidence is clearly not being offered to show propensity?

Commonwealth's brief at 4.

"[T]he admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Fransen*, 42 A.3d 1100, 1106 (Pa.Super. 2012) (citation omitted), *appeal denied*, 76 A.3d 538 (Pa. 2013). "An abuse of discretion is not merely an error in judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Belknap*, 105 A.3d 7, 10 (Pa.Super. 2014) (citation omitted), *appeal denied*, 117 A.3d 294 (Pa. 2015).

It is well settled that "evidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes." *Commonwealth v. Melendez-Rodriguez*, 856 A.2d 1278, 1283 (Pa.Super. 2004) (*en banc*); *see also* Pa.R.E. 404(b)(1). Nevertheless, "[e]vidence may be admissible in certain circumstances where it is relevant

for some other legitimate purpose and not utilized solely to blacken the defendant's character." ***Id.***

Specifically, evidence of other crimes or bad acts may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." ***Commonwealth v. Hairston***, 84 A.3d 657, 665 (Pa. 2014) (citations omitted), ***cert. denied***, 574 U.S. 863 (2014); ***see also*** Pa.R.E. 404(b)(2). Evidence of this kind may also be admissible under the ***res gestae*** exception, "where such evidence became part of history of the case and formed part of the natural development of facts." ***Commonwealth v. Ivy***, 146 A.3d 241, 251, (Pa.Super. 2016) (citation omitted); ***see also Commonwealth v. Dillon***, 925 A.2d 131, 137 (Pa. 2007) (stating, "this Court has recognized a ***res gestae*** exception to Rule 404(b) which allows admission of other crimes evidence when relevant to furnish the context or complete story of the events surrounding a crime." (citation omitted)).

Lastly, we note that when offered for a legitimate purpose, evidence of prior crimes or bad acts is admissible "if the probative value of the evidence outweighs its potential for unfair prejudice." ***Hairston***, 84 A.3d at 665 (citation omitted).

Upon review, we agree with the Commonwealth that evidence of Appellee's prior convictions for IDSI were relevant to demonstrate the ***res gestae***, or complete story, of law enforcement's extensive investigatory process in this matter; to show the manner in which J.D.'s initial mistaken

identification of his abuser as the Second Daniel Brubaker instead of the similarly-looking Appellee was ultimately discovered and resolved; and to rebut Appellee's defense of misidentification.

We further agree with the Commonwealth that the probative value of the aforementioned evidence outweighs its prejudicial effect. "[T]he trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." **Hairston**, 84 A.3d at 666. Here, in our estimation, the challenged evidence would not be so unduly prejudicial that it would likely divert the jury's intention away from its duty of weighing the evidence impartially.[4]

Based on the foregoing, we find that the trial court erred in denying the Commonwealth's motion to introduce Rule 404(b) evidence. Accordingly, we reverse the April 12, 2023 order of the Honorable Joseph F. Sklarosky, Jr., and remand this matter for further proceedings consistent with this opinion.

---

[4] In reaching this conclusion, we note that Appellee has not filed a brief in this matter.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judge Stabile joins the Opinion.

Judge Sullivan notes dissent.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/18/2024